## UNITED STATES v. JOHNSON and others.

*(Circuit Court, S. D. Georgia, E. D.   November Term, 1885.)*

1. CONSPIRACY DEFINED.
    A conspiracy is the corrupt agreeing together of two or more persons to do, by concerted action, something unlawful, either as a means or an end.

2. SAME—MERE PRESENCE WITHOUT PARTICIPATION.
    A mere presence on the occasion of the conspiracy is not sufficient to make one guilty. The person charged must incite, procure, or encourage the act, but if a person joins the conspiracy at any time after it is formed, he becomes a conspirator, and the acts of the others become his by adoption.[1]

3. CRIMINAL LAW—REASONABLE DOUBT.
    A reasonable doubt is not a mere guess—a mere surmise—that one may not be guilty of what he is charged; it is a doubt that you may entertain, as reasonable men, after a thorough review and consideration of the evidence,—a doubt for which a good reason arising from the evidence can be given.[1]

4. SAME—GOOD CHARACTER.
    In cases of doubt, good character is essential as a means of defense; but, where the charge is absolutely proven, it can be of no avail.

5. SAME—TRIAL—INSTRUCTION—SUMMING UP THE EVIDENCE.
    It is the settled practice in the courts of the United States for the presiding judge to sum up the evidence, and to call the attention of the jury to its salient and important points. This is done for the assistance of the jury, and it is not intended in any manner to derogate from their right to find the facts as they believe them to have been proven.

6. CONSPIRACY—NO VARIANCE.
    Where the indictment charges that the officers of the government were fired upon while searching for an illicit distillery, and the proof shows that the *posse*, at the time of the firing, had just searched a swamp without success, and were on their way to a certain man to get information by which they hoped to continue the search with more success, there is no variance between the allegation in the indictment and the proof.

7. SAME—NO VARIANCE.
    Where the indictment charges that the conspiracy is to injure and hinder a certain deputy collector of internal revenue in the discharge of his duties, by firing at him, and the proof shows that the firing was directed at the *posse* to which he belonged, and of which he was in command, he being present, there is no variance.

Indictment under Rev. St. § 5518.

*S. A. Darnell,* U. S. Atty., and *Fleming G. Du Bignon,* Special Asst. U. S. Atty., for the prosecution.

*Denmark & Adams* and *H. W. Carswell,* for the defense.

SPEER, J., *(charging jury.)*   In the regular and usual progress of investigations of this character, it now becomes my duty to give you,

---

[1] For discussion of the question of reasonable doubt, see U. S. v. Searcy, *ante,* 435, and note 442.

in charge, the law by which you are to be guided in your deliberations, and in view of which you are to find your verdict. Before proceeding to the discharge of this duty, I desire to say a word with regard to the importance of the functions you are now to perform. From the earliest period of our English-speaking race the method of trial by jury has been adopted for the settlement of those controversies which arise under the social system. It is incontestably the best, the fairest, the most just, the most effective method of determining all differences between the common members of society, and the issues which are formed between the government itself and the subjects or citizens of government. It is impossible to overestimate the importance of the work of the juror. To him is committed the duty to protect the oppressed from the oppressor, to redress the wrongs of those who have been wronged, to preserve the integrity of commercial transactions, to protect the title to property, to exonerate good name from the smirchings of slander, to stay the hand of the criminal,—in fact all of the questions upon which depend the enjoyment of that life, liberty, and property, to protect which society is organized, when such questions arise, are to be determined by "twelve good men in a box." Each juror, therefore, gentlemen, will, I am sure, appreciate the supreme importance of a conscientious discharge of his duty, how completely he should divest his mind of every impression except that which arises from the consideration of the evidence adduced before him, and those rules of law which are to govern him in the consideration and determination of the case submitted.

The defendant here is charged with the commission of a serious offense,—he is charged with conspiracy. With what conspiracy? We turn to the laws of our government, and find that in section 5518 of the Revised Statutes it is provided:

"If two or more persons in any state or territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce, by like means, any officer of the United States to leave any state, district, or place where his duties as an officer are required to be performed; or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof; or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties,—shall be punished," etc.

Now, the defendant is charged with the violation of that law. He is charged with one of the conspiracies specified in the statute.

It becomes important for the court to define to you what is a conspiracy. A conspiracy is the corrupt agreeing together of two or more persons to do, by concerted action, something unlawful, either as a means or an end. The word "corrupt," in the sense used, means "unlawful." The intendment of this definition is that to conspire to do an unlawful act, or to conspire to accomplish a result which may in itself be lawful, but to do it in an unlawful manner, or an unlawful agree-

ment to accomplish an unlawful result, are conspiracies. The unlawful combination may be expressly proven, or it may be derivable from concerted action in itself unlawful. A mere presence on the occasion of the conspiracy is not sufficient to make a person guilty, but there must be some word or act; the person charged must incite, procure, or encourage the act. It is also true that, if one join the conspiracy at any time after the formation of the conspiracy, he becomes a conspirator, and the acts of the others become his by adoption.

Now, with what conspiracy is the defendant charged? It is to be observed, gentlemen, that, in the operation of the government, it is necessary to raise a large sum of money by taxation, to pay the interest on the public debt, to pay the running expenses of government, to provide a sinking fund with which to pay the public debt,—in other words, to support the government,—and this amount is raised in part by taxation upon spirituous liquors. Therefore the law provides that persons who make spirituous liquors shall pay a specific tax, and also a tax per gallon upon the amount which they make. That tax is considerable; but it is a tax provided by law, and law-abiding men who are willing to bear their shares of the burdens of government will pay the tax. It is true, however, that in certain portions of the country —in fact, all over the country—there are some men who seek to avoid payment of that tax. They try to make spirits without paying the specific tax to the government, or without paying any tax. It has been found necessary, therefore, in the effort to make such men pay their taxes, and to make every man to bear his burden of taxation, to commission certain officers with the duty of collecting the taxes, and with the further duty of preventing a violation of the laws upon this subject. Some of these officers are collectors of internal revenue, and others deputy collectors of internal revenue. The duty of these officers is extremely important, and it is absolutely necessary that they should be permitted to discharge that duty without molestation. In this case, it is charged that the deputy collector, Clements, was on his way to seize an illicit distillery,—a distillery such as that just referred to,—carried on without a compliance with the provisions of the law relating to taxes on spirituous liquors; that he was searching for the distillery with a *posse;* that the defendant, with other persons, conspired, by force, by firing upon the officer and *posse,* and by intimidation, to prevent him from the discharge of his duty, and to injure him on account of the discharge of that duty, and while in its discharge. The court charges you that the deputy collector, Clements, had the right, under the law, to proceed to search for the distillery, which he supposed to be illicit. It was not only his right, but it was his duty. It was his right to take with him a *posse,*—whomsoever he saw fit to summon. The court charges you, if the defendant, with others, conspired to injure him by force, or threaten him, or intimidate him, on account of the discharge of his duty, or to prevent him from its further discharge, he would be obnoxious to the provisions of

this statute; and if the proof is sufficient to satisfy you that was the fact, it is your duty to find him guilty of the charge as laid in the indictment.

In this, as in all criminal cases, the burden is upon the government to make out its charge of crime to the satisfaction of the jury, and beyond a reasonable doubt. Now, you must understand what is a reasonable doubt. It is not a mere guess—a mere surmise—that one may not be guilty of what is charged. It is a doubt that you may entertain, as reasonable men, after a thorough review and consideration of the evidence,—a doubt for which a good reason, arising from the evidence, can be given. If you find such a doubt, it is your duty to give the prisoner the fullest and amplest benefit of it, and acquit him; but this doubt must arise from the evidence, or the want of evidence.

In this case, the defendant Thomas Johnson puts his good character in evidence, to show that he did not commit this offense. In cases of doubt, good character is essential as a means of defense; but where the charge is absolutely proven, it can be of no avail. For instance, if you are satisfied from the evidence in this case that the witnesses for the government have spoken the truth with regard to the defendant; if you believe that their evidence is true, and it satisfies your mind that there was a conspiracy as charged; that the defendant was present on the occasion of the conspiracy referred to, and took part in it; and that he fired on the *posse* of the officers, or in the direction of those officers,—it would be your duty to find him guilty, although they may have proven the good character of the defendant. But should you have any doubt whether you will believe the witnesses for the government, or the witnesses for defense, then he is entitled to the benefit of his good character, and it should have due weight with you.

Now, the evidence relied upon in this case is the testimony of the witnesses under oath. A witness who has testified plainly and intelligently should be credited by the jury, unless he has been impeached in some of the methods provided by law. The supreme court of Georgia has gone to a very great length, in the rule which it has enunciated on this subject. It has used some very severe language about a jury who disregarded the plain testimony of an unimpeached witness. A witness may be impeached by proof of general bad character. There is no such proof offered here, either as to the government's witnesses, or the defendant's witnesses. He may be impeached by disproving the facts testified to by him. You are to determine whether the facts testified to have been disproved. He may be impeached by contradictory statements in matters material to the issue. The witness may not be impeached unless the contradictions are matters material to the issue. Of course, it is the province and duty of the jury to examine, in every way, the evidence that has been submitted. The interest of the witness, the impartiality,

and the opportunities of knowing the facts are all proper matters for the consideration of the jury.

It is the settled practice in the courts of the United States for the presiding judge to sum up the evidence, and to call the attention of the jury to its salient and important points. This is done for the assistance of the jury, and is not intended in any manner to derogate from their right to find the facts as they believe them to have been proven. In pursuance of this practice, I will briefly call your attention to the evidence. The witness Clements, the deputy-collector, testified that, in company with the party with whom he was acting, on the twenty-second day of October last, he went into Montgomery county for the purpose of searching for a distillery; that they searched a swamp called "Johnson's Bay." Not finding that still there, they started to the house of a man of the name of Pritchard, in order to get further information in regard to the distillery, and witness stated that it was with the purpose of resuming the search. He testified he had to pass a place known as "McBride's Store." This is one of those ordinary country stores situated at the junction of two roads,— "in the fork of the road," to use a familiar term. The back door opens towards the right-hand fork, in the direction in which the *posse* of Mr. Clements was going; and the front of the house is on the other fork. It was the purpose of Mr. Clements to go the right-hand road, which led by the back door, and he testified that, as he approached the door, he saw some parties standing there. When he came down nearer, one of them ran out, and said, "Who are you?" Another ran a little to the left, and they both fired upon the *posse*. He saw the first man who fired. He knew him, and identifies him as the prisoner Johnson. He did not recognize the other parties, but swears positively to the identity of Johnson. He testifies that when the firing began, that it caused his horse to jump, to turn his buggy over, and that threw him out of the buggy and rendered him unconscious. He testifies that many shots were fired, and his horse was wounded.

The witness Rose testifies substantially to the same state of facts. The witness Wall also substantially corroborates Clements. I am not sure that Mr. Wall testified that he recognized Johnson,—the jury will remember. The witness Ryals identified Johnson, and states that he recognized him. The witness McBride testified that he was awakened by some person trying to gain admittance to the store; that presently the defendant came through the window, and Johnson said to him, "The woods are full of marshals." Presently the door was opened by McBride, and Carmichael and Mozo came through the door. Carmichael came through with two guns, which he leaned against the house in the room near the door. Mozo had something in his hand. Witness didn't know whether it was a gun or not. Johnson came through the window without a gun. They asked for something to eat, and witness provided them with some salmon and oysters. They ate one can of oysters, and witness was opening another, when,

about that time, a remark was made by Carmichael. · I believe the exact words of Carmichael were, "By God, they are coming." That defendant ran out of the back door, followed by Carmichael; that witness himself followed to the back door, and when he went through the back room he saw the guns were gone that Carmichael had placed there,—two guns. Witness didn't know who took them, and after they went out the firing began instantly outside, and witness knew no more about it. The testimony further, by several witnesses, is that a mule driven by Mr. Wall, one of this party, was wounded; the testimony being that the shots struck in a slanting direction. There was some testimony further, to the effect that there was something like wadding in the dash-board of Wall's buggy the next day, and there was much testimony to the effect that there were balls and shot imbedded in the church, in the probable or possible line of five of these parties, and in firing distance. That is about the testimony for the government to which it is proper for the court to call your attention. Of course, there was further evidence, but the court has called your attention to the main points in the evidence.

The testimony for the defendant now merits our consideration. Johnson testifies himself that that night he went to Long Pond, which it seems is a little village in Montgomery county, for the purpose of having a business transaction with Mr. Wells; that, when he had transacted his business, a young man named Hulsey desired to speak to him on some matter, and for that purpose they walked off from the Wells store, where they were standing, about 100 yards. While down there talking, they saw some parties in the woods, who at first they did not distinguish. One of this party asked who they were, and the reply was given, "Johnson and Hulsey." The party came up, when it appeared Carmichael was one of them. Carmichael said that the woods were full of marshals, and then Carmichael spoke of Mozo, who also came up, and Carmichael said there is that d—d Mozo now. He also said that if Mozo did not tell him where these marshals were, he would break his gun over his head. Johnson states that he got Carmichael quieted, and then Mozo and he went to the store, and got through the window, and woke up McBride, and told him to give them something to eat; that while they were eating, something was heard coming, and Carmichael made the remark, "There they are coming," and ran out; and Johnson ran after him, as he states, for the purpose of preventing him from firing. He states that there was some one outside who said, "They are coming," and Carmichael ran through the back door, and Johnson followed him, for the purpose of preventing him from the execution of his purpose; but when he failed to do so, he (Johnson) went around the corner, and met a man named Williams, and he and Williams left together. Williams testifies to the firing. Johnson came around the corner of the store, and told him he had better get away. The parties firing **were drunk, and might shoot him.** Williams and Johnson then

walked off together. Hulsey testified that he walked away some 100 yards with Johnson, and, after Carmichael and Mozo came up, Hulsey went home and went to bed, and afterwards heard the firing, and looked out of the window, and saw a part of it.

Now, gentlemen, you have the testimony,—the material evidence,—the more important portions of it. You are the judges whether or not you will give your credence to the government's or the defendant's witnesses. The witness McBride says that defendant left the store with Carmichael,—whether to prevent him from shooting or not, you are to determine. You are to determine whether you will accredit the witness McBride or believe the defendant. Another witness whose testimony has been referred to is the witness Carter. He testifies that he saw some parties leaving the place where the shooting was done. Immediately after, he heard the shooting, and was attracted by it. These parties were three in number, and one a little in advance, and his impression was that it was Mozo; and one of the parties said to the first, "Tom, did you hit?" or "Tom, are you hit?" He first said, "Tom, Tom;" and the answer was given, and then the witness states one of them said, "Did you hit?" or "Are you hit?" and the answer was, "Yes." He did not distinguish any of the parties positively, and did not distinguish the first, but thought he recognized Mozo. They were walking rapidly. This is the evidence for the government. If you believe the testimony of the witness Williams, you should acquit; but if you believe the testimony of Clements, Ryals, or Rose, who were there that night, you should convict. If you believe the testimony of defendant, Williams, and Hulsey, you should acquit; and if you have any reasonable doubt, which arises from the evidence, or from the want of evidence, which you should credit,—such a doubt as the court has already given you the definition of,—you should, of course, give the defendant the benefit of that doubt, and acquit him.

Something has been said about a technical failure on the part of the government to support its case, because it is insisted there is a variance between the allegations and the proof; the allegation being that the officer was in the act of searching for the distillery at that time, and the proof going to show, it is said, that he had abandoned the search for that night. The court charges you that the entire trip was a search for the distillery, if you believe they started out, in the first instance, to find the distillery, and that they had no other purpose. If, however, you believe that, at the time of the firing, they had permanently abandoned, and had no idea of resuming the search for the still, there would be a variance between the allegation and proof, and it would be your duty to acquit; but if you believe that they abandoned it simply for the night, and intended to continue the search in the morning, they would still be, in contemplation of law, in the act of searching, and it would be your duty to disregard this argument.

Something has been said about a failure to prove that the defendant shot at Clements. I charge you that, whether he shot at Clements or not, if he conspired with others to shoot at the party to which Clements belonged, he being present, with the purpose of injuring them, or any member who was engaged, under the direction of Clements, in the discharge of his official duty, he would be guilty of the offense charged in the indictment.

It is also insisted that, from the evidence, these parties did not intend to hurt the officers. Whether they intended to hurt the officers or not, if they fired at them to prevent or hinder them from the discharge of their duty; or if, so conspiring, it be true, as alleged, that he attempted to injure the property of the officer while in the discharge of his duty, in order to prevent him from the discharge thereof,—it would be material, under the terms of this indictment, and a violation of the statute.

The counsel for the defendant has requested the court to charge you, and the court charges you accordingly:

"(1) Four of the counts in the indictment charge that the defendant, with other parties, conspired and confederated for the purpose of interfering with the officer in the discharge of his duty; and the means of interference specified in four counts are that these conspirators shot at Clements with deadly weapons. One of the counts specifies, as the means used, that the conspirators shot at the horse of Clements. All of the counts charge that the officer was at the time searching for a still. In order to convict, one of these counts must be proved to your satisfaction as laid."

That is true, gentlemen, under the qualifications already given you in charge.

"(2) If you believe from the testimony of the government's witnesses that the theory of the prosecution is that the means used was the shooting at Clements with a deadly weapon, you cannot convict, unless satisfied beyond a reasonable doubt that Johnson was a party to this shooting at Clements."

That is good law, and the court gives it you in charge.

"(3) The specific question before you is not whether or not any particular witness is guilty of perjury. although the credibility or accuracy of a witness may be involved incidentally. The question is, in view of all the evidence and all the circumstances of the case, is the defendant guilty of the offense charged, beyond a reasonable doubt?"

"(4) There are other ways of impeaching witnesses, in addition to proof of general bad character. There are other ways,—such as proof of contradictory statements."

Counsel for the United States request the court to charge that if Clements, the deputy collector, was, at the time of the assault, before that time, or intended to be afterwards, engaged in searching for a distillery, and that if the enterprise upon which he had entered had not been fully ended and abandoned, then, in contemplation of law, the search for the distillery was still in progress; that it is not necessary for the United States to prove that Clements was, at the particular moment of the assault, searching for a distillery; that the phrase "searching for a distillery" must be accepted as having a con-

tinuous application to the whole enterprise, when it appears that was the purpose for which the same was entered upon; nor was it necessary that Clements should have had a warrant to make his enterprise legal and under the protection of the statute in such case made and provided.    The court also gives you that request.

I have referred to the fact that the crime alleged was a very serious offense, but this must not prejudice you against the prisoner. It becomes all the more important that you should consider well the testimony before you bring in a verdict.    The citizens must respect the laws, and, if ,you believe, from the evidence, that this law has been violated as alleged, you should find the defendant guilty; if not, you should find him not guilty.

No government can exist unless the officers who seek to enforce its laws are protected.  .If such conduct as that described in this indictment is permitted to go unwhipt of justice, the community will be demoralized; every man will be affected; the prosperity of the country shaken; lawlessness will prevail on all sides.    While this is true, you should be especially careful not to confuse the importance of the accusation with the question of the guilt or innocence of the prisoner.    No matter how serious is the charge against him, he is entitled to the same even-handed justice from you that he might expect in the most trivial and inconsequential affair.    The court adjures you to be perfectly impartial between this government and the accused, and will now commit the case to your hands.

The jury returned a verdict of guilty, and a motion for a new trial was made and overruled.