COMMONWEALTH *vs.* JULIA A. NASON & another.

Worcester. March 20, 1925. — May 22, 1925.

Present: PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Abortion. District Court. Jurisdiction. Practice, Criminal,* Pendency of complaint and of indictment for same offence, Exceptions. *Evidence,* To impeach witness, Relevancy, Competency. *Witness,* Impeachment. *Physician and Surgeon.*

A woman, indicted with her husband for a violation of G. L. c. 272, § 19, suffered no legal harm in being compelled to submit to trial on the indictment before a decision was reached by a district court upon a complaint against her previously sworn to and received in that court and charging the same offence.

At the trial of an indictment against a man and his wife for violation of G. L. c. 272, § 19, the Commonwealth called as a witness one against whom had been made in a district court a complaint for participation in the same crime which afterwards had been dismissed for want of prosecution. In his cross-examination, the witness answered that he had not talked with any one before giving his testimony. After a noon recess at the trial, he was recalled for redirect examination and

stated that he had talked with others before he had given his testimony, and, relating to a statement which he had made to a police officer on the same day on which he had been arrested for participation in the offence, stated that he had seen the statement during the noon recess and had had it explained to him and had been told that he had better change his testimony; and that he did not know that he was under arrest when he made the statement. The defendant refused to disclaim that the witness's testimony was a recent fabrication. The statement to the police officer then was offered by the Commonwealth and was admitted subject to an exception by the defendant. *Held,* that there was no error in receiving the statement to the police officer.

It was not prejudicial to the defendants at the trial above described, after a woman, who had been called by the defendants as a witness, had testified that she was their friend and had seen in her bed the woman upon whom the defendants were accused of operating in violation of the statute and that the woman had told her that she had been taking pills, to permit the witness to be asked in cross-examination by the district attorney, "Did it occur to you that she might have had a miscarriage or something?" and to admit the answer, "Why, no."

A police officer properly was permitted to give, in contradiction of the testimony of the witness who had changed his testimony during an intermission in the trial as above described, a different version as to what was said to him by the prosecuting officer at the noon recess in order to rebut the inference that his testimony was but an echo from the office of the district attorney.

The defendants, to prove that they were treated differently by the Commonwealth than was the man who had been accused with them in the District Court and to affect the credibility of that witness when he testified that he had no arrangement or understanding with the Commonwealth, offered records of the District Court to prove that the chief of police and the complainant in the cases before the District Court made statements to the judge relative to the disposition of the cases. The records were objected to by the Commonwealth, and were excluded. *Held,* that the exclusion was proper.

The offence created by G. L. c. 272, § 19, is complete when a defendant unlawfully uses an instrument upon the body of a woman with intent to procure her miscarriage, and it is entirely immaterial that the foetus previous to the act complained of has lost its vitality so that it never could have matured into a living child.

No error was committed at the trial above described by a refusal by the judge to instruct the jury, "If you find from the evidence that at the time . . . [the woman operated upon by the defendants] came to the defendants the foetus which she was carrying had already from the treatment administered by herself or . . . [her male companion] become dead and decayed and that whatever the defendants did was merely to try to remove the remains of the dead foetus for the purpose of relieving the said . . . [woman] they cannot be convicted," where it appeared that the jury were instructed in substance that "a physician has a right to commit an abortion and if it is done upon the best judgment of that doctor and his judgment corresponds with the average

judgment of the doctors in the community in which he practises, that can cease to be illegal and becomes legal," and that if the defendant, who was a physician, "gave the advice and the woman defendant was acting under his advice, she is justified, but if he was giving advice that she didn't know of and was taking on her own enterprise and undertaking to do something whereby she was not covered by a physician's advice, she cannot justify unless she was acting under his instructions."

INDICTMENT, found and returned on October 21, 1924, charging the defendants Howard N. Nason and Julia A. Nason with violation of G. L. c. 272, § 19, as described in the opinion.

In the Superior Court, the indictment was tried before *Hall*, C.J.

The witness Flynn, referred to in the opinion, was called by the defendants, and in her testimony testified "that she lived in Fitchburg and was a family friend of the Nasons; that while Elizabeth Bruneault was at the Nason house she called one evening and saw Miss Bruneault in her bedroom and that during her conversation with Miss Bruneault, Miss Bruneault told her that she had been taking pills."

The witness Duffy, whose testimony is described in the opinion, stated in his cross-examination after the noon recess, that, when he made his statement in writing to the police, he did not know that he was under arrest.

Other material evidence and proceedings at the trial are described in the opinion. Both defendants were found guilty and alleged exceptions.

*H. W. Blake*, (*A. T. Bazydlo* with him,) for the defendants.

*C. B. Rugg*, Assistant District Attorney, (*E. G. Norman*, Assistant District Attorney, with him,) for the Commonwealth.

PIERCE, J. The defendants, husband and wife, were jointly indicted under G. L. c. 272, § 19, for unlawfully using a rubber tube upon the body of Elizabeth M. Bruneault, with intent to procure her miscarriage, and were arrested on warrants issued under said indictment. The male defendant obtained bail, but the defendant Julia A. Nason did not and had not when, on October 28, 1924, both defendants being in court, the prosecuting officer moved a jury be empanelled to

try them for the offence charged.    Before any action on this motion, the defendant Julia A. Nason presented a petition for a writ of habeas corpus, alleging in substance that she was illegally restrained of her liberty under the warrant issued upon said indictment, because she had already been complained of and held to bail for the same offence in the Winchendon District Court and that the proceedings in that court had never been dismissed or otherwise disposed of in her presence or with her consent.    The presiding judge granted a writ of habeas corpus returnable to the Supreme Judicial Court in Boston on October 31, 1924, and, subject to the exception of the defendant, ordered the trial to proceed.

The offence charged being punishable in the State prison, for more than five years, the district court was without final jurisdiction to make a finding of guilt or innocence which should bind the Commonwealth or the defendants.    G. L. c. 218, § 26.    In such a case the power of the district court is to determine whether or not there is probable cause for charging the person with the crime and, if it thinks there is, to bind such person over for trial in the Superior Court. G. L. c. 218, § 30.    The pendency of such a hearing in the district court is not a ground for quashing an indictment pending the examination, any more than the pendency of an indictment is a good plea in abatement to another indictment or another complaint for the same cause;   and this is especially true where, as here, there can be no final judgment in the district court.    *Commonwealth* v. *Drew*, 3 Cush. 279. *Commonwealth* v. *Cody*, 165 Mass. 133, 136.    The cases cited and relied on by the defendants rest upon statute mandates of the State of New York, which find no counterpart in the statutes of this Commonwealth.    It follows that the defendants suffered no legal harm in being compelled to submit to trial before a decision was had upon the complaint in the district court.    *Klous* v. *Judges of the Municipal Court of the City of Boston*, 251 Mass. 292.

At the trial the Commonwealth introduced testimony tending to show that in May, 1924, one Elizabeth M. Bruneault became pregnant as a result of sexual intercourse with one Louis P. Duffy;   that in September Duffy interviewed

both the male and female defendants at their home, and, as a result of negotiations taking place at such interviews, took Miss Bruneault to the defendant's house in the evening shortly before September 12; that after she went there, the defendant Julia A. Nason, with the sanction and approval of the defendant Howard N. Nason, inserted a rubber tube into the body of said Bruneault and performed certain other operations upon her, as a result of which a few days later she was delivered of a child about three months and two weeks advanced from conception.

Louis P. Duffy was a witness for the Commonwealth and it appeared "that upon the sixth day of October, 1924, he was escorted from his home to the town hall by the chief of police of the town of Winchendon and there interviewed at length by the said chief and a member of the State police as a result of which he signed and made oath to a written statement purporting to set forth the facts of which he had knowledge in the case. Upon the same afternoon complaints were filed by said chief of police in the District Court of Winchendon against Julia A. Nason, Howard N. Nason and Louis P. Duffy, and the case against witness Duffy was upon the twenty-third day of October, 1924, dismissed for want of prosecution." In cross-examination Duffy was asked whether he had talked with any one about the case before giving his testimony; he answered that he had not. The cross-examination was concluded just before the noon recess. After court reconvened for the afternoon session he was recalled to the stand by the Commonwealth and then stated, in response to the question of the prosecuting officer, that he had talked with others before he gave his testimony. Duffy in cross-examination then said in substance that he did not understand in the morning that he had been asked whether he had ever talked with any one about the case; that he had talked with one McCarthy and understood that he had been asked that, but he did not know what it meant; that during the noon recess he had seen his statement and had it explained to him and had been told that he had better change his answers and answer differently; that the officers had arrested him the very day that he made the statement;

that he made it at four o'clock, and was arrested at half past three; that he had not been told that he was under arrest and was not told until night; that the officers commenced the talk the day he made the statement. In redirect examination Duffy identified his statement taken by McCarthy in Winchendon, October 6, 1924. This paper was then offered in evidence and, subject to the defendants' exception, was received after the defendants' counsel had replied, "I do not disclaim," to the question put him by the court, "Do you disclaim that the statement he now makes is recent fabrication?"

There was no error in receiving the evidence. The defendant by his cross-examination sought to prove that Duffy had testified under the influence of bias or was in a situation of moral duress by reason of the fact that he had been arrested as an accessory before the fact to the crime for which the defendants were on trial, and that the complaint had been dismissed for lack of prosecution; and for the further reason that his testimony in chief was false and of recent fabrication. *Commonwealth* v. *Retkovitz*, 222 Mass. 245.

The answer of the witness Flynn on her cross-examination by the prosecuting officer, "Why, no," to the question "Did it occur to you that she might have had a miscarriage or something?" was not prejudicial to the defendant. The evidence of McCarthy which substantially contradicted the testimony of Duffy as to what was said by the prosecuting officer at the recess was properly admitted to rebut the inference that Duffy's change of testimony was but an echo from the office of the district attorney. *Commonwealth* v. *Williams*, 244 Mass. 515, 520.

The records of the district court, offered by the defendants to prove that Callahan, chief of police of Winchendon and the complainant in the cases before the district court, made statements to the judge relative to the disposition of the cases of Nason and Duffy, were inadmissible and properly excluded in proof of the contention of the defendants that they were treated differently though complained of for the same thing; and as affecting the testimony of Duffy that he had no arrangement or understanding with the Commonwealth.

The request (1) that "An indictment for producing a miscarriage cannot be maintained if the foetus had previous to the acts complained of lost its vitality so that it could never have matured into a living child," was refused rightly. The offence created by the statute is complete when a defendant unlawfully uses an instrument upon the body of a woman with intent to procure her miscarriage, and it is entirely immaterial that the foetus previous to the act complained of has lost its vitality so that it never could have matured into a living child. *Commonwealth* v. *Taylor*, 132 Mass. 261. The request (4) that "If you find from the evidence that at the time Elizabeth M. Bruno came to the defendants the foetus which she was carrying had already from the treatment administered by herself or Duffy become dead and decayed and that whatever the defendants did was merely to try to remove the remains of the dead foetus for the purpose of relieving the said Elizabeth M. Bruno they cannot be convicted," was refused rightly. As respects the contention of the defendant, suggested by this request, the judge instructed the jury "But they say in addition if these things were done there, if some of the things testified by the complainant and witnesses here or by the prosecutions were done, there is another view of them that makes them outside this statute, and there were no unlawful means employed to do what was done, and, therefore, no existing intent to commit any crime, and they respond to this action or indictment by the statement that one of the defendants is a physician, and what was done there was done upon his judgment. Now then, a physician has a right to commit an abortion and if it is done upon the best judgment of that doctor and his judgment corresponds with the average judgment of the doctors in the community in which he practises, that can cease to be illegal and becomes legal, just as legal as if he were delivering a woman with forceps five days before the period gestation. If that defence is true, it is a complete defence if they both have acted under it. If he gave the advice and the woman defendant was acting under this advice, she is justified, but if he was giving advice that she didn't know of and was taking on her own

enterprise and undertaking to do something whereby she was not covered by a physician's advice, she cannot justify unless she was acting under his instructions." This was sufficiently full and accurate to protect the rights of the defendants. *Commonwealth* v. *Surles*, 165 Mass. 59.

*Exceptions overruled.*