[No. 27159. Department Two. November 23, 1938.]

THE STATE OF WASHINGTON, *Respondent,* v. HARRY D. Cox, *Appellant,* LOIS BRANDON, *Defendant.*[1]

[1]Reported in 84 P. (2d) 357.

**68**

*Davis, Heil & Davis* and *Joseph J. Lavin,* for appellant.

*Ralph E. Foley, C. C. Quackenbush,* and *Harvey Erickson,* for respondent.

SIMPSON, J.—Defendants Harry D. Cox and Lois Brandon were jointly charged by an information filed by the prosecuting attorney of Spokane county with the crime of abortion. The offense was alleged to have been committed upon Mildred Funk on or about the thirtieth day of January, 1938.

Upon the trial, the jury found defendant Harry D. Cox guilty. The motion for a new trial having been made and overruled, judgment and sentence were entered, from which defendant Cox appeals.

Appellant makes the following principal assignments of error: (a) The court erred in refusing to grant the motion of appellant for a directed verdict made at the close of the state's case and at the conclusion of all of the testimony introduced; (b) error was committed in the giving of two instructions; (c) in the refusal to give three instructions requested by appellant; (d) in giving one instruction and later withdrawing it from the consideration of the jury; and (e) in denying appellant's motion for a new trial.

The defendant Brandon, just prior to the reception of any evidence, through her attorney, made a statement to the court in chambers and in the presence of the

attorneys for the state and the appellant, the pertinent part of which was as follows:

"  .  .  .  that defendant Brandon's attorney will not interfere with the selection of jurors by the state and the attorneys for Dr. Cox; that defendant Brandon's attorney will not call any witnesses on her behalf; third, that defendant Brandon's attorney will not cross-examine any witnesses called by either the state or Dr. Cox; that defendant Brandon's attorney will not object to misconduct on the part of the attorneys for the state, except that it violates the terms of this agreement; that defendant Brandon's attorney will not address the jury; that defendant Brandon's attorney will object to her being called as a witness on behalf of either the state or the defendant Cox throughout this proceeding; that defendant Brandon will enter a plea of guilty at the conclusion of all of the testimony in this case."

The agreement was understood and consented to by the prosecuting attorney and counsel for appellant. The jury was then impaneled, and evidence taken, Lois Brandon being present with her attorney. The jury had no knowledge of the agreement to which we have just referred.

In passing upon questions concerning the admissibility of testimony and in the giving of its instructions, the court was careful to advise the jury that they must disregard and not take into consideration any evidence or admissions, either written or oral, made by Lois Brandon, not made in the presence of appellant.

The evidence submitted by the state may be summarized as follows: Appellant is a sanipractor, duly licensed as a drugless physician under the law of this state.

As a result of illicit relations with one Clarence Sandall, Mildred Funk, an unmarried woman twenty-three years of age, became pregnant. Desiring to have an abortion performed, Miss Funk and Sandall visited

Mrs. Brandon at her home in Spokane during the first part of July, 1937. The Brandon home had, in addition to a kitchen, reception room, and five bedrooms, an operating room which was equipped with an ordinary operating table and certain surgical instruments. Mrs. Brandon was advised of the pregnancy and was asked about the amount of money she would require to perform the abortion. Appellant was present at the Brandon home on that occasion and, after he had talked to Mrs. Brandon in the kitchen, came into the operating room, where Miss Funk was sitting, and told her that he couldn't perform the operation unless "they had the fifty dollars first." Sandall and Miss Funk, being unable to agree with Mrs. Brandon with respect to the charge for the operation, left her home and had the abortion performed by another.

After the first abortion had been performed, Miss Funk and Sandall resumed their illicit relations, and she became pregnant a second time. January 29, 1938, the young woman, accompanied by Sandall, again went to the Brandon home and made financial arrangements for the performance of the second abortion. At that time, Mrs. Brandon, by means of a syringe, injected certain substances in the sexual organs of Miss Funk, packed them with cotton or gauze, and told her to return as soon as certain reactions were present.

Early the next morning, Miss Funk returned to the Brandon home, and was put in a bed in a room occupied by another girl, referred to as the "blond girl." Later in the morning of that day, appellant came into the house by way of the back, or kitchen, door, and after a consultation with Mrs. Brandon went into the room occupied by the two girls. When appellant came into the bedroom, he said to the blond girl, "Well, how do you feel today?" She answered, "All right." He said, "Have you started to flow or cramp any?" He

was told, "No, not yet. Well, Doctor, what time do you suppose I will be ready to fix?" The appellant stated: "Well, I will fix you up between one and two o'clock this afternoon." Appellant then turned to Miss Funk and said: "I guess I am to be your doctor, too."

Shortly afterward, Miss Funk was taken into the Brandon surgery and strapped onto the operating table. Appellant then proceeded to use certain surgical instruments in the performance of an operation upon the sexual organs of Miss Funk, the description of which it is not necessary to relate, except to say he curetted a portion of her sexual organs, including the womb, and removed certain membranous tissue and afterbirth. Curettement was defined by the medical experts as the "emptying of any of the bodily cavities." Miss Funk was then returned to her bed by Mrs. Brandon, and the doctor left the house. During the day, a sister of Miss Funk notified the police officers of the city of Spokane of the fact that the abortion had taken place, and they went to the Brandon home and arrested Mrs. Brandon and Miss Funk. Several weeks later, appellant was arrested.

Miss Funk was taken from the Brandon home to the police station, and from there to a Spokane hospital, where she was attended by Dr. Lien. Dr. Lien, a witness for the state, testified that the removal of the membranous tissue and the afterbirth with surgical instruments would constitute a part or portion of an abortion. Miss Funk was healthy in every respect, and Dr. Lien testified that she was perfectly capable of bearing children, and that there was no necessity for an abortion to be performed in order to save her life or that of the child. Appellant was friendly with Mrs. Brandon, visted her home and stables many times, and was permitted on various occasions to ride horses owned by her.

At the close of the state's case, appellant moved the court for a directed verdict on the ground that the state had wholly failed to make out a case. That motion was denied.

The evidence of appellant contradicted in every respect that of the state. He testified that he was not present at the Brandon home in July, 1937, and had not seen Miss Funk on that date, or at any time prior to January 30, 1938; that he was not in the bedroom in the Brandon home on the date last mentioned, and did not talk to a blond girl as related by Miss Funk.

He stated that he stopped at the Brandon home January 30, 1938, while on his way to see some horses owned by Mrs. Brandon which were kept in a stable a short distance from her home; that his only purpose in stopping was to inquire about one of the horses in which he was very much interested. He stated that he entered the house through the kitchen door, and talked with a man who was sitting at a table; that Mrs. Brandon came into the kitchen while he was talking and said that she "had a little patient there she wished he would come in and look at."

His testimony was to the effect that Mrs. Brandon told him that the girl had been sent to her by another physician in the city of Spokane; that the girl was suffering; that she had telephoned to the home and office of the doctor who had sent the girl to her, but could not locate him, and for that reason wanted the appellant to examine her patient; that, shortly after his conversation with Mrs. Brandon, he went into the operating room of the Brandon house and saw the girl, Miss Funk, on a table; that she was flowing freely and in apparent pain. That in caring for her, he used some instruments supplied by Mrs. Brandon, and carefully removed the fetus, which had passed into the vagina, some blood clots, and a piece of membrane protruding

out of the cervix. He said that what he did was an emergency, not a part of an abortion operation, but was done to protect the health and life of Miss Funk. Appellant was corroborated by several witnesses in his contention concerning his interest in the horses owned by Mrs. Brandon and his stated purpose in stopping at her house.

At the conclusion of the introduction of all the evidence, appellant again moved for a directed verdict, which was denied by the court. As soon as the case had been concluded, and before the court instructed the jury, Lois Brandon, true to her promise and agreement, entered a plea of guilty.

■ The first question presented is whether the evidence presented a question for the jury. Rem. Rev. Stat., § 2448 [P. C. § 8740], provides:

"Every person who, with intent thereby to produce the miscarriage of a woman, unless the same is necessary to preserve her life or that of the child whereof she is pregnant, shall— . . .

"(2) Use, or cause to be used, any instrument or other means;

"Shall be guilty of abortion, and punished by imprisonment in the state penitentiary for not more than five years, or in the county jail for not more than one year."

All of the evidence submitted by the state and the appellant was for the consideration of the jury. Its verdict upon the contradicted evidence cannot be questioned by the court. There was sufficient evidence presented by the state, if believed, to warrant the finding that appellant and Mrs. Brandon acted in conjunction with one another and accomplished the abortion of Miss Funk. *State v. Powers,* 155 Wash. 63, 283 Pac. 439; *State v. Martin,* 178 Wash. 290, 34 P. (2d) 914.

■ Instruction No. 3 given to the jury, to which

appellant excepted and now urges was erroneous, reads as follows:

"I find that it will be best to consider all of these three elements together, namely, whether this defendant used an instrument or instruments upon the person of Mildred Funk, and if so, *whether he did so with intent to produce the miscarriage of said Mildred Funk, and whether the use of an instrument or instruments by the defendant Harry D. Cox, if used, was not necessary to preserve the life of Mildred Funk or that of the child with which she was pregnant.*

"The question of the intent may be shown either by direct and positive testimony or it may be inferred from all of the facts and circumstances surrounding and attending the act, as shown by the evidence in the case, *and if you find that this defendant did use an instrument or instruments upon the person of Mildred Funk you must determine with what intent they were used from the evidence in this case.*

"In this connection, I instruct you that since the defendant Lois Brandon has pleaded guilty to the charge of abortion, that if you find by the evidence and beyond all reasonable doubt that as part of her agreement to perform an abortion upon the person of said Mildred Funk she promised to call a physician and surgeon to assist her in the performance of such abortion, and you further find beyond all reasonable doubt that pursuant to such promise said defendant Lois Brandon called the defendant Harry D. Cox to assist her in performing such abortion, and that the defendant Harry D. Cox in performing his part of the abortion used an instrument or instruments, then it will not be material or necessary to determine what part of the operation was to be performed and was actually performed by Harry D. Cox, but if you find from the evidence and beyond all reasonable doubt that he did pursuant to the request of the defendant Lois Brandon perform some part of the operation of abortion upon Mildred Funk and in doing so he used an instrument or instruments, then he would be guilty of the crime with which he is charged, provided that such abortion was not neces-

sary to preserve the life of Mildred Funk or that of the child whereof she was pregnant." (Italics ours.)

There was sufficient evidence presented to justify the giving of this instruction. Without recapitulating all of the evidence pertaining to the relations between Mrs. Brandon and appellant in regard to the performance of abortion operations, it is sufficient to state that, under the evidence, the instruction was proper.

█ The next error urged is the giving of instruction No. 6, which is as follows:

"If you find that the defendant Harry D. Cox used an instrument or instruments upon the person of Mildred Funk, then before you can find the defendant guilty of the crime of abortion *you must also be satisfied beyond a reasonable doubt that he used such instrument or instruments with the intent and for the purpose of producing an abortion,* and if you find that this defendant Harry D. Cox did not agree with the defendant Lois Brandon to perform some part of the abortion upon the person of Mildred Funk and you do find from the evidence that said defendant used a speculum or other instrument or instruments for the purpose of an examination only of the person of said Mildred Funk, then you must return a verdict of not guilty.

"However, if you find that defendant Cox, upon an examination of the person of Mildred Funk, observed that some one had begun an operation for abortion on the person of Mildred Funk, and the defendant Cox whether at the request of defendant Brandon or of his own volition, used an instrument or instruments upon the person of said Mildred Funk in further performance of said operation of abortion, then you should return a verdict of guilty against the defendant Cox." (Italics ours.)

We can see no error in the giving of this instruction. When construed in conjunction with all of the other instructions in the case, it sets out fairly the law applicable to the facts presented.

■■ The next error urged is the failure of the court to give certain instructions requested by appellant. Proposed instruction number one concerned the intent necessarily to be included in the crime of abortion, and further that appellant as a sanipractor had lawful authority to use instruments for the purpose of the examination and treatment of a patient; and if appellant acted in good faith in using instruments for examining and treating Miss Funk, then such conduct would not constitute the offense charged.

Proposed instruction No. 3 is as follows:

"You are further instructed that before you can find the defendant guilty, you must find beyond a reasonable doubt that the defendant used an instrument, or instruments, on Mildred Funk, with the intent and for the purpose of producing a miscarriage.

"If, therefore, although you find that the defendant used a speculum, or any other instrument or instruments, for the purpose of an examination and for the purpose of treating the patient, Mildred Funk, and you do not find, beyond a reasonable doubt, that he used the said instruments with the wilful and unlawful intent thereby to produce a miscarriage, then your verdict must be for the defendant."

Proposed instruction No. 4 relates to the proof of the crime when based upon circumstantial evidence.

Counsel for appellant contends that, when Miss Funk returned to the Brandon home January 30, 1938, the fetus had been expelled from the womb and no medical or surgical aid could have restored it to its normal position; that the abortion had been produced; and that the good faith of the appellant in removing the fetus from the person of Mildred Funk should have been submitted to the jury as requested by the proposed instruction.

A careful reading of the testimony does not bear out the contention that the abortion had been completely

performed prior to the time appellant treated Miss Funk. The evidence discloses that the packing in her sexual organs was first removed by appellant, and that he scraped or curetted her womb. True, appellant testified that he removed a little fetus that had passed out of the womb and that he did not scrape it. Dr. Lien testified that the fetus, or part of it, came from the womb several days after Miss Funk had been in the hospital.

Assuming that appellant's contention concerning the destruction of the fetus were true, nevertheless, the acts of appellant as related by the state's witnesses were part of an operation of abortion. The fact that Mrs. Brandon had destroyed the life of the fetus could not excuse the appellant. It is entirely immaterial that the fetus previous to the acts of the appellant had lost its vitality so that it could not mature into a living child. The statute defining abortion is designed to protect the life of the mother as well as that of her child. *State v. Howard,* 32 Vt. 380; *Commonwealth v. Surles,* 165 Mass. 59, 42 N. E. 502; *Commonwealth v. Nason,* 252 Mass. 545, 148 N. E. 110; *Dowdy v. State,* 19 Ala. App. 503, 98 So. 365.

The question of the good faith of appellant was properly submitted to the jury at the time the court explained the necessary elements of the crime, including the intent to abort, and then explained that all of those necessary elements must be proved beyond a reasonable doubt. Again, in instructions Nos. 3 and 6, the court elaborated on the question of intent as shown by the italicized portions set out above.

The instructions given, considered together, fairly state the law with respect to the evidence received in this case in regard to the crime charged in the information. *State v. Denby,* 143 Wash. 288, 255 Pac. 141; *State*

*v. Peck,* 146 Wash. 101, 261 Pac. 779; *State v. Sandros,* 186 Wash. 438, 58 P. (2d) 362.

Finally, appellant complains that he was prejudiced by a statement made by the court at the time it withdrew an instruction from the consideration of the jury. After giving the instructions, the court concluded that one was not proper, withdrew it from the others given, and said, "That is the law, but it has no application to this case."

The court withdrew the instruction and told the jury not to consider it. We think that was proper, and cannot be asserted to constitute prejudicial error. *Reed v. State,* 66 Neb. 184, 92 N. W. 321; *State v. Wells,* 54 Kan. 161, 37 Pac. 1005; *Jones v. Atlantic Coast Line R. Co.,* 194 N. C. 227, 139 S. E. 242; *Cole v. North Danville Coop. Creamery Ass'n,* 103 Vt. 32, 151 Atl. 568; Branson's Instructions to Juries (1914), 141, § 95.

Finding no reversible error in the record, we affirm the judgment.

STEINERT, C. J., BEALS, MILLARD, and GERAGHTY, JJ., concur.