TERRITORY OF HAWAII *v.* PETER L. YOUNG.

No. 2544.

Submitted June 22, 1945.　　　　　Decided July 25, 1945.

Kemp, C. J., Peters and Le Baron, JJ.

OPINION OF THE COURT BY PETERS, J.

This is a writ of error to review a judgment of conviction upon verdict of a jury of the crime of abortion. The following errors have been specified:

1.　Error in instructing the jury, in defining a reasonable doubt, that such a doubt was one for which a reason could be given;

2.　Error in permitting the prosecution, when defendant admitted having been convicted of a certain offense, to question him further over objection, with respect to said offense;

3. Error in refusing to instruct the jury at defendant's request that our criminal statute relating to abortion does not apply to acts to procure the miscarriage of a woman having a dead fetus in her womb.

The errors specified will be considered *seriatim*;

1. The language to which objection is made is but a part of the instruction given by the court upon burden of proof, presumption of innocence and reasonable doubt. The instruction in full reads as follows: "I further instruct you that the burden of proof is upon the Territory and the law presumes the defendant to be innocent, and this presumption continues and attends him at every stage of the case until it has been overcome by evidence which proved him guilty to your satisfaction and beyond a reasonable doubt. And in this connection, I instruct you that the doubt which will entitle the defendant to an acquittal must be a reasonable doubt, not a conjured-up doubt, such a doubt as you might conjure up to acquit a friend, but a doubt that you could give a reason for.

"A reasonable doubt is not a slight doubt, not a probable doubt, not a possible doubt, not a conjectural doubt, not an imaginary doubt, not a doubt of the absolute certainty of the guilt of the accused, because everything relating to human affairs and depending upon mortal evidence is open to conjectural or imaginary doubt, and because absolute certainty is not required by law. The real question is whether after hearing the evidence and from the evidence you have or have not an abiding belief, amounting to a moral certainty that the defendant is guilty and if you have such belief so formed, it is your duty to convict and if you have not such belief so formed it is your duty to acquit."

The cases are in conflict upon the subject. The expression "a doubt for which a reason can be given," in more or less varying form, is found in instructions upon reasonable

doubt given by trial judges in federal courts.[1]　In the cases cited in note one the propriety of the instruction was not questioned.　In some jurisdictions similar instructions have been sustained.[2]　In others they were held to constitute prejudicial error.[3]　And in still others, though criticized, the error, if any, was considered harmless.[4]

---

[1] "* * * a doubt for which a reason may be assigned." U. S. v. Stephens, 27 Fed. Cas. 1314 (#16392). " * * * a doubt for which a good reason, arising from the evidence, can be given." United States v. Johnson, 26 Fed. 682, 685. "* * * a doubt for which a good reason can be given, which reason must be based on the evidence, or the want of evidence." United States v. Jackson, 29 Fed. 503, 504; United States v. Cassidy, 67 Fed. 698, 782.

[2] "* * * a doubt for which you can give a reason." Wallace v. State, 41 Fla. 547, 580. It is "* * * a doubt which must arise from the evidence, or lack of evidence, and for which some reason can be given." Griggs v. United States, 9 C .C. A. 158, 572, 578. "* * * a doubt for which some good reason arising from the evidence can be given." The People v. Guidici, 100 N. Y. 503, 510, 3 N. E. 493, 495. "* * * a doubt for which a reason can be given, based on the evidence in the case * * *." Butler v. The State, 102 Wis. 368, 78 N. W. 590, 591; citing Emery and another v. The State, 101 Wis. 627, 78 N. W. 145. "* * * such a doubt as the juror is able to give a reason for." State v. Grant, 20 S. D. 168, 105 N. W. 97, 99, citing State v. Serenson, 7 S. D. 277, 64 N. W. 130.

[3] "* * * a reasonable doubt is one for which a reason could be given based on the evidence or want of evidence in the case." Pettine v. Territory of New Mexico, 201 Fed. 489, 495 (C. C. A. 8th Cir.); Ayer v. Territory of New Mexico, 201 Fed. 497, 498 (C. C. A. 8th Cir.). "A reasonable doubt is such a doubt as the jury are able to give a reason for." State of Iowa v. Cohen, 108 Iowa, 208, 78 N. W. 857, 858; Siberry v. The State, 133 Ind. 677, 33 N. E. 681, 684. "It must be a ground of doubt for which a reason can be given, which reason must be based upon the evidence or want of evidence." Owens v. United States, 130 Fed. 279, 283 (C. C. A. 9th Cir.). "* * * a doubt for the having of which the juror can give a reason derived from the testimony." Carr v. State, 23 Neb. 749, 751, citing Cowan v. State, 22 Neb. 519; see also Childs v. State, 34 Neb. 236, 51 N. W. 837. "* * * a doubt * * * for which you as reasonable men can give a good and sufficient reason." State v. Rosenberg, 97 N. J. 430, 433, 118 Atl. 207, 208; see also State v. Parks, 96 N. J. 360, 363. "* * * a doubt you can give a reason for." Abbott v. Territory, 20 Okla. 119, 94 Pac. 179.

[4] "* * * a doubt arising out of the facts and circumstances of the case in maintaining which you can give some good reason." People v. Stuben-

In the Michigan case the court made the following comment: "Conceding, in this case, that the exposition of the phrase by the circuit judge was not strictly accurate, yet it is apparent that it could have produced no practical consequence in this case." The Ohio court observed: "This objection does not impress us as of the highest consequence." The Oregon court said in conclusion: "The particular language in question may be, and no doubt is, subject to the criticism that it does not define, but needs defining, but we do not think it could have misled or perplexed the jury when considered in connection with the remainder of the instruction. If every criminal case is to be reversed for some technical inaccuracy in the definition of a reasonable doubt, then indeed the 'administration of justice becomes impracticable.' "

The question involved arises from the difficulty encountered by trial judges in presenting to juries in criminal cases instructions for their guidance in applying the rule of proof beyond a reasonable doubt. The degree of proof necessary to convict is complimentary to the presumption of innocence and unless understood the presumption of innocence is of little protection to the accused. To instruct a jury merely that the defendant is presumed innocent until he is proved guilty beyond a reasonable doubt, while sufficient in itself to accord to him his substantial rights, has been thought by many courts, including those of Hawaii, to be insufficient as a guide to juries in arriving at their ultimate conclusions and they have attempted to define the term. These instructions have taken the form of a definition of the adjective "reasonable," the inclusion

---

voll, 62 Mich. 329, 334, 28 N. W. 883. "* * * a doubt for which you can give a reason." State v. Sauer, 38 Minn. 438, 439, 38 N. W. 355. "* * * a doubt that you as a juror can give a reason for." Morgan v. The State, 48 Ohio 371, 27 N. E. 710, 712. "* * * a doubt as a juror can give a reason for." State v. Morey, 25 Ore. 241, 36 Pac. 573, 577.

of instructions of what are not reasonable doubts and the time-honored test enunciated by Chief Justice Shaw in *Commonwealth.* v. *Webster* reported in 5 Cush. (Mass.) 295, 320.

The instruction in controversy is of this type. From long continued use and uniform approval by this court when before it for review, it has assumed the dignity of a stock instruction. It came before this court in substantially the same form in 1889 in the case of *The King* v. *Ahop*, 7 Haw. 556, 560, and was approved, the author of the opinion eruditely observing that the instruction was taken from the notes to *Commonwealth* v. *McKie*, 1 Leading Crim. Cases, pages 320, 321. It was also before this court in *Territory* v. *Robello*, 20 Haw. 7, decided in 1910, and in *Ter.* v. *Buick*, 27 Haw. 28, decided in 1923, when again it was approved. While it does not appear that in any of those cases the particular error herein specified was advanced or discussed, the language giving rise to the present objection as an integral part of the definition of reasonable doubt was necessarily considered. It has also been subject to the judicial scrutiny of this court upon writ of error in three capital cases since the effective date of Laws of 1931, chapter 42, section 2, making it obligatory in case of a sentence of death to review the evidence to determine if the interests of justice require a new trial, whether the insufficiency of the evidence is assigned as error or not.[5]

To the legal mind it is difficult to formulate a satisfactory definition of the term "reasonable doubt." The difficulty seems to stem from the futile attempt to define the obvious. But instructions are addressed to the lay and not the legal mind. And measured by the purposes

[5] No. 2257, Territory v. Corum, No. 2466, Territory v. Alcosiba, No. 2454, Territory v. Gagarin.

sought to be attained, the instruction complained of is, as a whole, as good as can be devised to convey to the lay mind the ordinarily accepted definition of reasonable doubt.

"Burden of proof" is a term employed to indicate upon whom rests the duty of persuasion by proof. To persuade another is to convince such other that a thing is so. If convinced, such other possesses a settled belief that the thing is so. In criminal cases the burden of proof is directed to the persuasion of the trier of the facts of the guilt of the defendant of the offense charged. But due to the presumption of innocence accorded persons accused of crime the trier of the facts, before he may say he is convinced, must be satisfied of the defendant's guilt beyond all reasonable doubt. Hence it is, that the measure of persuasion is spoken of as proof beyond a reasonable doubt, and the measure of the intensity of belief of the trier of the facts becomes the measure of persuasion. It is to communicate intelligibly to jurors a method of self-analysis for one's belief that instructions upon reasonable doubt are directed.

It may be taken as conceded by the defendant that with the elimination of the language "but a doubt that you could give a reason for" the instruction correctly states the law. The negative definitions contained therein unquestionably conform to the accepted definitions of what is not a reasonable doubt. They, similarly as the language objected to, are calculated to define the adjective "reasonable." Isolated phrases must be construed in the light of the context in which they appear. The meaning to be ascribed to the phrase "a doubt you could give a reason for" must necessarily be construed in the light of the negative definitions given and as so construed harmonizes with the instruction as a whole. A doubt that one can give a reason for is unquestionably a reasonable doubt. A doubt that one cannot give a reason for is within the cate-

gory of the negative definitions contained in the instruction. Both positive and negative definitions are directed to the mental operation of the jurors. It is a mental and not a demonstrable doubt to which the phrase refers. Instructions upon reasonable doubt are not given to supply individual jurors with material to meet adverse arguments of their fellow jurors. Nor are they calculated to enable the individual juror to criticise the mental operations of another juror. A juror is not required to give his reasons to other jurors for his mental reactions or conclusions. The instruction was well calculated to assist the jury in applying the test, with which it concludes: "The real question is whether after hearing the evidence and from the evidence you have or have not an abiding belief, amounting to a moral certainty that the defendant is guilty." What to one man might be a slight, probable, possible, conjectural or imaginary doubt may, in all seriousness, be to another a reasonable doubt. Each juror, in his own way, is presumably making an honest effort to determine whether he entertains in his own mind a doubt of the defendant's guilt and if so whether such doubt is a conjectural or imaginary doubt or is one that has its basis in reason, one for which he can give a reason and therefore reasonable. If the intensity of his belief is such that he can say he has an abiding belief amounting to a moral certainty of the guilt of the defendant then the degree of persuasion has been met, otherwise not. Whatever the form of words employed, if the concepts of the language used are consistent with the ordinarily accepted meaning of the term "reasonable doubt" the instruction meets the test of definition. As said by Professor Wigmore: "The truth is that no one has yet invented or discovered a mode of measurement for the intensity of human belief. Hence there can be yet no successful method of communicating intelligibly to a jury a sound method of self-analysis for

one's belief. If this truth be appreciated, the Courts will cease to treat any particular form of words as necessary or decisive in the law for that purpose; for the Law cannot expect to do what Logic and Psychology have not yet done."[6]

2. The following colloquy occurred upon cross-examination of the defendant as a witness on his own behalf.

"Q Have you ever been convicted of drunkenness?

A Yes, once; once in a lifetime.

Q Once in a lifetime, you say, Doctor?

A Yes.

Q And that was right after this case? That was right after (name of prosecutrix omitted) went to the hospital? (objection; objection overruled)

A About a month after."

The defendant urges that by this evidence there was presented to the jury the details of the offense of which the defendant had been convicted.

Whether the specification of error urged was preserved below is open to considerable doubt. No grounds of objection were alleged. Nor does it appear from the record what reasons, if any, were assigned for such objection. Moreover, no exception was alleged to the ruling of the court. Hence the error specified comes within the prohibition of Revised Laws of Hawaii 1935, section 3563, as construed by this court in *Ter.* v. *Gagarin*, 36 Haw. 1.

Nevertheless, we have considered the question and find it to be without merit. It is competent under the provisions of Revised Laws of Hawaii 1935, section 3831, for the prosecution to question the defendant upon cross-examination as to whether he had been convicted of any indictable or other offense.[7] His answer "once in a life-

---

6 Wigmore, Evidence, (3d ed.) § 2497, p. 325.

7 Terr. v. Goo Wan Hoy, 24 Haw. 741.

time" not only implied infrequency but remoteness. The extent that the credibility of the defendant might be impaired by former conviction of an indictable or other offense would be affected accordingly as such conviction was recent or remote. It is, therefore, legitimate for the prosecution to fix the time of conviction. This it sought to do by reference to an incident with which the jury was familiar, that is, the time when the prosecutrix went to the hospital. But it was to the time of the defendant's conviction and not to the time of his being drunk that the question was directed. The time of the conviction of offense is not a detail of the offense in the objectionable sense of improper cross-examination of the details of an indictable or other offense of which the witness had been convicted.

3. The court refused to give the following instruction, requested by the defendant: "I instruct you that the statutes on abortion are. intended to prevent and punish the destroying of embryo human life, the germs of human life before birth, in the course of nature, and would not apply to acts to procure the miscarriage of a woman having a dead fetus in her womb."

We need only concern ourselves with that portion of the instruction that declares that the statutes on abortion would not apply to acts to procure the miscarriage of a woman having a dead fetus in her womb. If an incorrect statement of the law, the instruction was properly refused *in toto.*

Revised Laws of Hawaii 1935, section 6232, defines the crime of abortion as follows: "Whoever maliciously, without lawful justification, administers, or causes or procures to be administered any poison or noxious thing to a woman when with child, in order to produce her miscarriage, or maliciously uses any instrument or other means with like intent, shall, if the woman be then quick with child, be

punished by a fine not exceeding one thousand dollars and imprisonment at hard labor not more than five years; and if she be then not quick with child, shall be punished by a fine not exceeding five hundred dollars, and imprisonment at hard labor not more than two years."

The gravamen of the crime of abortion, as defined by section 6232, *supra*, is the malicious administration of drugs to or the use of instruments upon a woman with child in order to produce a miscarriage.

The term "with child" is not defined by the lexicographers. It is included in the definitions of the noun "pregnancy" and of the adjective "pregnant" and is often used synonymously with the latter term. The noun "miscarriage" is defined as "the act of bringing forth before the natural time; a premature birth; with women, the delivery of the fetus before the twenty-eighth week of pregnancy.[8] The verb "miscarry" is defined "to bring forth in child-birth prematurely; abort;"[9] "to suffer untimely delivery; to bring forth young prematurely; to give birth to a fetus which is not viable."[10] Where the abortion is for criminal purposes the word "miscarriage" carries the added implication of the unlawful interference with the course of pregnancy with the intent of destroying the product of conception.

The noun "miscarriage" obviously implies that the woman aborted is with child and the term "with child" qualifying the noun "woman" might quite properly have been omitted from the statute. It apparently is present for the dual purpose of excluding from the condemnation of the statute misconceived abortions, that is, abortions where the woman is not actually with child, and of defining the period within which the crime may be committed,

---

8 Funk & Wagnalls New Standard Dictionary. (1929 ed.)
9 Funk & Wagnalls New Standard Dictionary. (1929 ed.)
10 The Century Dictionary & Cyclopedia.

that is, from the moment the womb is instinct with embryo life and gestation has begun until expulsion or delivery.[11] The latter consideration is confirmed by the degrees of punishment attached to the crime of abortion accordingly as the woman is quick with child or not. (§ 6232, *supra.*)

While the term "with child" similarly as the adjective "pregnant" ordinarily denotes vitality of the fetus, it also connotes a physical condition following conception and continuing until expulsion or delivery, irrespective of whether the fetus prior to expulsion has lost its vitality so that it could not mature into a living child. The adjective "pregnant" has been so construed.[12] Nor do the definitions and connotations of the noun "miscarriage" exclude abortions of feti which prior to expulsion have lost their vitality so that they could not mature into living children. On the contrary, according to its ordinarily accepted meaning it has reference to premature birth, either spontaneous or induced, irrespective of the prior vitality of the fetus.

Plaintiff in error places great reliance upon the case of *Commonwealth* v. *Wood*, 11 Gray (Mass.) 85. The statute under which the defendant was prosecuted is not available in the library but is quoted in *Commonwealth* v. *Brown*, 14 Gray (Mass.) 419.

Although differently from our statute defining abortion, the Massachusetts statute uses the adjective "pregnant" instead of "with child" in describing the woman aborted, it is otherwise sufficiently similar to our local statute to resort to decisions of that state construing its provisions as precedents. But the opinion of the court in the *Wood* case does not support the thesis that in order that the crime of abortion be complete the fetus must have

---

11 Mills v. Commonwealth, 13 Penn. (1 Harris) 631, 632.

12 State v. Howard, 32 Vt. 380, 398; State v. Tippie, 89 Ohio 35, 105 N. E. 75, 77; State v. Cox, 197 Wash. 67, 84 Pac. (2d) 357, 361.

had vitality up to the time of miscarriage. The question presented for review was whether the trial court had improperly refused an instruction upon lawful justification, a defense recognized by the Massachusetts statute, similarly as Revised Laws of Hawaii 1935, sections 6232 and 6233. Under section 6232 the abortion to be criminal must be "without justification." Section 6233 absolves persons from criminal liability for abortion where the means used are for the purpose of saving the life of the woman. The trial court had refused an instruction that a lawful justification "would exist if the child with which Sarah Chaffie (the woman aborted) was pregnant was not a live child." And in considering the alleged error the appellate court, among other things said: "If the defendant meant to say it would be a legal justification to show that the fetus with which the woman was pregnant had lost its vitality so it could not mature into a living child, we think the decision correct and that the jury should have been so instructed, if there was any evidence before the jury upon the subject. But the bill of exceptions not only fails to state that any such evidence was given at the trial or offered, but expressly negatives the fact. If there had been evidence that the fetus had lost its vitality it might have been the duty of the judge to say directly to the jury that if they so found, the case was not within the statute. Upon the case made by the bill of exceptions there was no occasion for any direction on the matter."

It would seem from the foregoing quoted language of the court that the vitality of the fetus was pertinent only as it might affect the defense of lawful justification and that the court did not hold as claimed by plaintiff in error that the woman was not pregnant within the meaning of the statute if the fetus had lost its vitality so that it could not mature into a living child. The *Wood* case is not persuasive to say the least. Not alone is it not in point, but

is mere *dicta* and whatever implications it possessed they were neutralized by the subsequent amendment of the statute. (See *Commonwealth* v. *Taylor*, 132 Mass. 261 and *Commonwealth* v. *Surles*, 165 Mass. 59, 42 N. E. 502.)

The jury was fully instructed upon what constituted lawful justification within the exception of section 6232, *supra*, and upon the provisions of section 6233. The legal effect of these statutory provisions are not involved in the consideration of the instruction, the subject of this specification of error.

Judgment affirmed.

*F. Patterson* and *E. J. Botts* for plaintiff in error.

*W. Z. Fairbanks*, Public Prosecutor, and *J. E. Parks*, Assistant Public Prosecutor, for defendant in error.

