[No. 20244. Department One. April 15, 1927.]

THE STATE OF WASHINGTON, *Respondent*, v. WARREN O. DENBY *et al.*, *Appellants*.[1]

[1] ROBBERY (2)—INDICTMENT—CHARGE OF TAKING—SUFFICIENCY. An information for robbery sufficiently charges the taking was not with the consent of the victim when it alleges the taking was by means of force and violence.

[2] SAME (2)—INDICTMENT—DESCRIPTION OF PERSON—SUFFICIENCY. In an information for robbery of a certain person, the use of the article "the" in place of the pronoun "his" in describing the person put "in fear" is sufficient where there was only one person robbed.

[3] SAME (2)—INFORMATION—VALUE OF PROPERTY. In an information for robbery, the statement of the value of the property taken is surplusage, since such value is not an element of the crime.

[4] SAME (8)—EVIDENCE—SUFFICIENCY—CHARACTER OF PROPERTY TAKEN. An allegation that property taken in a robbery was moonshine whiskey is sufficiently established by the evidence of a witness that the kegs had been filled with moonshine whiskey and that the appellant opened one of them and tasted and found it such.

[5] CRIMINAL LAW (448)—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE. Error cannot be assigned upon the receipt of evidence as to an identification to the effect that the person seen resembled the accused, where that was only a link in the chain and not a material circumstance necessarily to be relied on, its weight being for the jury.

[6] ROBBERY (7)—EVIDENCE—ADMISSIBILITY. Evidence that a revolver found in possession of the accused resembled in size and appearance the revolvers used by highwaymen in a robbery is admissible.

[7] CRIMINAL LAW (452)—HARMLESS ERROR—INSTRUCTIONS. It is not error to refuse requested instructions that are given in the general charge.

Appeal from a judgment of the superior court for Spokane county, Witt, J., entered April 17, 1926, upon a trial and conviction of robbery. Affirmed.

[1]Reported in 255 Pac. 141.

*John F. Aiken,* for appellants.

*Chas. W. Greenough,* for respondent.

FULLERTON, J.—By an information filed in the superior court of Spokane county, the appellants, Denby and Linem, were charged with the crime of robbery. The charging part of the information reads as follows:

"That the said defendants, Warren O. Denby and Dick Linem, alias Jack Armstrong, in the county of Spokane, state of Washington, on or about the 11th day of March, 1926, then and there being, did then and there wilfully, unlawfully and feloniously, with force and violence and fear of immediate injury to the person, take from the immediate presence of one, George Arvanitis, certain personal property, to wit: one hundred gallons of moonshine whiskey, of the value of six hundred dollars, the said property then and there being in the possession and under the dominion and control of said George Arvanitis, and belonging to said George Arvanitis."

To the information the appellants demurred, which demurrer was overruled, whereupon they entered pleas of not guilty and the case proceeded to trial. The jury returned a verdict of guilty as charged against both of the appellants, and they then moved in arrest of judgment and for a new trial. These motions the court denied and entered the judgment in accordance with the verdict. The appeal is from the judgment so entered.

From the facts presented at the trial, it appears that, on March 10, 1926, the complaining witness, George Arvanitis, a Greek resident of the city of Spokane, was approached by one Harry Woods and told that parties from Lewiston, Idaho, desired to purchase some one hundred gallons of moonshine whiskey. A meeting place was appointed, and in the evening of that day, at about six o'clock, Arvanitis went to a room occupied by

Woods where he met the appellant Linem. At this meeting, Arvanitis and Linem discussed the terms of a possible sale and purchase of liquor, Arvanitis agreeing to furnish the liquor at a price of six dollars per gallon. Linem was not then ready to close a bargain, saying he would have to consult his partner and would let him know later whether he would take the liquor or not.

On the evening of the 11th, Linem called Arvanitis and stated to him that he had received word from his partner and that they would take the liquor, making an appointment with him at a certain time and place where they would agree as to the place to make delivery. At the appointed time, Arvanitis drove in his car to the appointed place and there met Linem who told him that his partner was at the Spokane Hotel and it was necessary for him to see him before final arrangements could be made, telling Arvanitis at the same time to drive down to the Spokane Hotel, where the appellant would meet him. Arvanitis drove as directed, the appellant following in a Hudson coach. The appellant met some person at the hotel and talked with him for some moments, and then came to Arvanitis's car and told him that they were ready to take the liquor and for him to go and get it.

The evidence is not very definite as to the place the liquor was to be delivered, but it is evident that they gave Arvanitis to understand that they would meet him on the road some place on his return trip. Arvanitis then drove to his cache, which was some distance from the city of Spokane, took from the cache seven 10-gallon and two 15-gallon kegs of moonshine whiskey, loaded the kegs into his car and started back to Spokane. After proceeding a short distance, he overtook one Preston Moore, who was walking along the highway in

the direction Arvanitis was going, and took him into his
car. The car then proceeded about a mile when they
were signalled to stop by a flashlight. Arvanitis came
to a stop and found himself nearly abreast of another
car, described by him as the Hudson coach already men-
tioned. Two men approached him with drawn revolv-
ers, one from the right side of the road and the other
from the left. Arvanitis did not submit tamely, and a
struggle ensued during which he was dragged from his
car, struck repeatedly, and finally subdued by a blow on
the head from one of the revolvers. During the struggle
several shots were fired from one of the revolvers.
The liquor was then transferred from Arvanitis's car
to the car of the highwaymen, who then started down
the road in the direction of Spokane. Arvanitis then
called to Moore, who seems to have retreated to a place
of safety at the beginning of the struggle, and the two
entered upon the pursuit of the fleeing car. They had
proceeded but a short distance when a shot from the
pursued car punctured the radiator of Arvanitis's car,
which in a short time thereafter caused him to abandon
the pursuit. The sheriff's office was shortly thereafter
notified of the robbery, and the appellants, from the de-
scription of them given by Arvanitis and Moore, were
arrested on the next day in the city of Spokane.

The state produced as a witness a garage keeper in
the city of Spokane who testified that the appellant
Linem, shortly after seven o'clock in the evening of
March 11th, came to his place of business and desired
to rent a car for use later on in the evening. The owner
agreed to rent the car and prepared a rental contract,
leaving it with an employee. Later on, some person
came and took the car, signing the name "D. Wilson"
to the contract. The car was returned during the night
of the 11th and the speedometer reading showed that

it had been driven by the renter somewhere near seventy-five miles. On the morning of the 12th, Linem came to the rental garage and reported that a door had been torn off the rented car while it was in use by the renter. The car was taken to a repair shop, and, while there, it was discovered that it contained two small holes resembling bullet holes, one in the right side of the cowl and one in the top.

The appellants were arrested in a rooming house in the city of Spokane, and clothing was there found similar to the clothing the highwaymen were wearing at the time of the robbery. A revolver was also found in the room. It was similar in size to those used in the robbery, but an examination showed it to be one that had not been fired for some time.

The appellants did not take the stand, but other witnesses for them attempted to establish an alibi.

The appellants make a number of assignments of error, the first being that the evidence is insufficient to justify a conviction. But we think this objection hardly requires argument. The mere statement of the evidence, we think, shows that a case was made for the jury.

[1] It is next urged that the court erred in not sustaining the demurrer to the information. An examination of the information shows that it does not follow the language of the statute, which defines the crime of robbery, in that it does not contain in precise words the allegation that the taking of the property was against the will of the complaining witness. The information does charge, however, that the taking was with force and violence and by putting in fear. This, we think, is sufficient to meet the objection made. While it must appear from some source in an information for robbery that the taking was not with the consent of the victim,

this sufficiently appears when it is charged that such taking was by means of force and violence. The supreme court of California had a similar question before it in the case of *People v. Riley,* 75 Cal. 98, 16 Pac. 544. The California statute defining robbery is very similar to our own, and the court there held that an information charging a robbery by force and violence sufficiently charged that the robbery was without the consent of the victim. *State v. La Chall,* 28 Utah 80, 77 Pac. 3, is also to the same effect.

[2] It is further contended that the information is fatally defective because it does not describe the person who was put in fear of injury by the acts thought to constitute the crime of robbery. The statute (Rem. Comp. Stat., § 2418) [P. C. § 9116], defines the crime of robbery as the unlawful taking of personal property from the person of another, or from his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property or the person or property of a member of his family, or of anyone in his company at the time of the robbery. The information, it will be noticed, does not follow this phraseology, but substitutes the article "the" for the pronoun "his" in describing the person put in fear, and it is argued that this is so far indefinite as to leave it uncertain who was put in fear. But we cannot think the objection of substantial merit. There was but one person robbed, which fact is gathered from a reading of the information as a whole, and manifestly the information makes it clear that the person intended by the words "the person" is the person named in the information.

[3] In support of their motion in arrest of judgment the appellants contend that, since the state alleged the value of the property taken from the prosecuting

witness, it was necessary to submit proof of such value, and that no proof of value whatsoever was submitted. With these contentions we cannot agree. The sale price agreed upon is some evidence of value, but, were it not so, value of the property taken is not in this state an element of the crime of robbery (*State v. Rowan*, 84 Wash. 158, 146 Pac. 374), and it follows that such an allegation in an information is mere surplusage which does not require proof. It must be remembered that the gravamen of the crime of robbery, under our statutes, is the taking of property from the person or from the presence of another by force and violence, or by putting in fear, and that the value of the property is not material to the degree of the offense. The essential thing is the manner of the taking.

[4] A second objection in support of the motion is that the state, having alleged that the property taken from the prosecuting witness was moonshine whiskey, was bound to prove the fact, and that they did not so prove it. But the witness testified that the kegs taken from his car at the time of the robbery contained moonshine whiskey when they were placed in the cache, and that, when loading them into his car prior to the robbery, he opened one of them and took a drink of its contents and that it proved to be moonshine whiskey. This, we are clear, was sufficient proof to take the question to the jury.

[5] It is assigned that the court erred in refusing to strike the testimony of a witness by the name of Guay. This witness was called by the state to identify the person who returned the car to the rental garage on the night following the alleged robbery. The witness was not entirely positive in his identification of the person, but the witness did state that the person bringing back the car resembled the appellant Linem in size and ap-

pearance. Objections of this sort go rather to the weight of testimony than to its competency, and testimony is rarely objectionable because of its want of weight. Moreover, this was only a link in the chain of circumstances introduced by the state to connect the appellants with the crime. It was not the material circumstance on which the state relied for a conviction, and it is not to be supposed that the jury gave it more weight than it deserved.

[6] It is complained that the court committed error in admitting in evidence the revolver found in the room the appellants were occupying at the time of their arrest. The objections are that the revolver was not properly identified; that it bore no evidence of recent firing, while the evidence was that the revolvers used by the highwaymen at the time of the robbery were fired; and that it was so far defective as to be incapable of being fired. But these objections are hardly justified by the record. The prosecuting witness testified that the revolver resembled in size and appearance the revolvers used by the highwaymen; and, since it was found in the possession of the appellants, this is a sufficient identification for its admission in evidence under the rule of *State v. Jensen,* 114 Wash. 401, 195 Pac. 238. As to the second branch of the objection, we do not find that Arvanitis testified that in the struggle for the possession of the property at the time of the robbery, both of the revolvers were fired. As we read his statement, only one of them was fired. Nor is the revolver incapable of being used as a firearm. It was defective in its mechanism, in that the hammer lock had been so altered as to do away with the necessity of a trigger pull to fire it. It was, however, capable of being used as a firearm by the old-time process known as fanning.

[7] The instruction of the court in which it defined

the elements necessary to constitute the crime of robbery is objected to as incomplete. The more particular objection is that the court did not in that instruction tell the jury that it was necessary, in order to constitute a completed crime, that the property be taken against the will of the prosecuting witness. But we find that elsewhere in the instructions the court did tell them that such was a necessary element, and we cannot conclude that its omission from this particular instruction requires a reversal. It is a familiar rule that instructions must be taken as a whole, and, if from the whole instruction it can be gathered that the jury were properly instructed as to all of the elements which constitute the crime, it is sufficient, notwithstanding some one of them omits some essential part.

The other assignments of error but raise in different forms the questions already discussed, and it is not necessary that they be specially noticed.

The judgment is affirmed.

MACKINTOSH, C. J., MAIN, MITCHELL, and FRENCH, JJ., concur.