[No. 28646.   Department Two.   May 13, 1942.]

THE STATE OF WASHINGTON, *Respondent,* v.
HARRY SEVERNS, *Appellant.*[1]

[1]Reported in 125 P. (2d) 659.

*Charles F. Bolin* and *E. L. Bennett,* for appellant.

*Edgar H. Canfield* and *Ralph S. Barber,* for respondent.

JEFFERS, J.—On November 7, 1940, an information was filed in the superior court for Klickitat county, by the prosecuting attorney of that county, charging Harry Severns with the crime of forcible rape. The charging part of the information is as follows:

"That on or about the 22nd day of October, 1940, and within the last three years immediately preceding the

filing of this information, in Klickitat county, Washington, the above named defendant, Harry Severns, did, then and there being, unlawfully, feloniously, wilfully, and forcibly overcoming her resistance, against her will and without her consent, have sexual intercourse with one Betty Marlowe, a female person over the age of eighteen years, the said Betty Marlowe not then and there being the wife of the said Harry Severns."

After the filing of this information, defendant was arrested, and on November 13, 1940, arraigned, at which time he entered a plea of not guilty. The case did not come on for trial until September 25, 1941, and, on September 27th following, defendant was, by the verdict of the jury, found guilty of the crime charged in the information. Motions in arrest of judgment, or in the alternative for new trial, were timely made and denied, and judgment and sentence entered on November 10, 1941, from which judgment defendant has appealed. Appellant makes twenty-four assignments of error.

At the time of the act here charged, appellant was living with his wife, Nellie Severns, in Hood River, Oregon. He had formerly lived in Wishram, Washington, and had known Betty Marlowe, the complaining witness, since she was a small girl. Mrs. Severns has two married daughters, one, Viola Rayburn, living in Wishram, where the complaining witness resides, the other daughter, Mary Howard, living in Hood River.

Betty Marlowe is a young woman twenty years of age, who at the time of the act charged in the information was living with her uncle, Sam Marlowe, at Wishram. Betty had apparently made her home with her uncle since she was a small child. It does not appear that Betty had ever been approached by appellant, or that he had ever in any way made any advances of any kind to this young woman, prior to the time of the act

here in question. According to her testimony, the alleged act was committed in the early morning of October 22, 1940, between the hours of four-thirty and six-thirty, at which time her uncle, who was a railroad man, had left on his run and she was alone in the house.

Betty testified on cross-examination that she had a boy friend in Portland, and that she had spent most of the week previous to the occurrence here in question in Portland, where she stayed with a Mrs. Sweezel. It was apparently the theory of the defense, in part at least, that Betty had been intimate with this boy friend in Portland, that she thought she was in trouble, and that, in making this charge against appellant, she was trying to protect her boy friend.

This prosecution is based upon Rem. Rev. Stat., § 2435 [P. C. § 9107], subdivision (2), which provides:

"Rape is an act of sexual intercourse with a female not the wife of the perpetrator committed against her will and without her consent. Every person who shall perpetrate such an act of sexual intercourse with a female of the age of ten years or upwards not his wife; . . .

"(2) When her resistance is forcibly overcome;
. . .
"Shall be punished," etc.

Appellant bases error on the refusal of the trial court to grant appellant's motion for a directed verdict, or withdraw the case from the consideration of the jury at the close of the state's case, there being insufficient evidence to submit the case to the jury on the theory of forcible rape. Appellant also bases error upon the refusal of the trial court to direct a verdict in appellant's favor at the close of all the evidence.

The argument of appellant in support of these motions is based principally upon the claim that the state

failed to show that the complaining witness, Betty Marlowe, to the extent that she was physically capable, resisted the efforts of appellant to accomplish the act; in other words, that the state failed to show that the resistance of Miss Marlowe was overcome by that degree of force which the law requires.

In view of the fact that we are in accord with the action of the trial court in denying these motions, and in view of the further fact that we have concluded that a new trial must be granted in this case, we do not deem it necessary to discuss the evidence, other than to say that, under the facts of the case and the law applicable thereto, the trial court was justified in denying the above motions. The degree of force used by appellant in this case to accomplish his purpose, as testified by Betty Marlowe, was sufficient to bring the case within the rule announced in *State v. Pilegge*, 61 Wash. 264, 112 Pac. 263, and *State v. Mertz*, 129 Wash. 420, 225 Pac. 62.

We shall now pass to a discussion of the error claimed as the basis for the motion for new trial.

It may be noted that § 2435, *supra*, has five subdivisions, and we quote subdivision (3):

"When her resistance is prevented by fear of immediate and great bodily harm which she has reasonable cause to believe will be inflicted upon her;"

As we have stated, the information charged the act was committed by forcibly overcoming the resistance of the complaining witness, or under subdivision (2), *supra*. However, the trial court gave instruction No. 5, as follows:

"You are instructed that so far as is necessary *for your consideration*, as a matter of law, the crime of rape is defined as follows:

" 'Rape is an act of sexual intercourse with a female not the wife of the perpetrator committed against her

will and without her consent. Every person who shall perpetrate such an act of intercourse with a female of the age of ten years or upwards not his wife; (a) when her resistance is forcibly overcome, *or* (b) *when her resistance is prevented by fear of immediate and great bodily harm which she has reasonable cause to believe will be inflicted upon her.'"* (Italics ours.)

Appellant timely excepted to the giving of instruction No. 5, and bases error thereon.

The state makes a contention in regard to instruction No. 5, which we have not before heard advanced in a criminal case. We quote from pages twenty-four and twenty-six of respondent's brief:

"This [referring to instruction No. 5] is merely a statement of section 2435 R. R. S. which is our forcible rape statute. It is true that the information was *phrased only in the words of subdivision 2 of that statute.* However the evidence adduced at the trial in many respects went beyond the pleadings both in the direct and cross-examination. Respondents contend that the instruction complained of charges only one crime and goes no further than merely explaining to the jury *how that crime might be committed,* and that in so doing the court was guided by the evidence brought forth upon examination. . . .

"It is the respondents contention that the court may *in all instances go beyond the pleading with his instructions* provided the evidence which has been placed before the jury warrants such a proceeding. The jury is entitled to know what the law is concerning the offense, and the court may in its discretion define the offense, the sole limitation being that the court stay within the bounds of the crime charged." (Italics ours.)

Rem. Rev. Stat., § 2057 [P. C. § 9270], provides:

"The indictment or information must be direct and certain. as it regards: —

"1. The party charged;

"2. The crime charged; and

"3. The particular circumstances of the crime charged, when they are necessary to constitute a complete crime."

We have recognized that, where the statute provides that a crime may be committed in different ways or by different means, it is proper to charge in the information that the crime was committed in one of the ways or by one of the means specified in the statute, or in all the ways. Even though the statute disjunctively connects the different ways or means, the information may allege them conjunctively, provided the different ways or means are not repugnant to each other. *State v. Adams*, 41 Wash. 552, 83 Pac. 1108; *State v. Meyerkamp*, 82 Wash. 607, 144 Pac. 942. However, we have been cited to no authority, nor do we know of any, which permits a court, when the information charges the act to have been done in only one of the ways or by one of the means named in the statute, to instruct the jury that they may consider other ways or means by which the act may have been committed.

We are firmly of the opinion that, where, as in the instant case, the information charges that the crime was committed in a particular way, under one subdivision of a statute, it is error for the trial court to instruct the jury, as was done in this case, that they might consider other ways or means by which the act charged might have been committed, regardless of the range which the court may have permitted the testimony to take.

We seriously doubt that, where an instruction such as instruction No. 5 in this case has been given, the error can be corrected by a subsequent instruction, especially where, as in the instant case, the state, in its argument to the jury, is permitted, over objection, to call the jury's attention to the way or means by which

the act might have been committed, as set out in the instruction, although not charged in the information.

It will be noticed that in instruction No. 5, the trial court did not purport to give merely the statutory definition of forcible rape, but stated:

"You are instructed that *so far as is necessary for your consideration,* as a matter of law, the crime of rape is defined as follows:   . . . "   (Italics ours.)

It is difficult to conceive that the jury could read instruction No. 5 and conclude other than that they had the right to consider whether or not the resistance of the complaining witness was overcome either by force or by putting her in fear of immediate and great bodily harm.

We appreciate that this court has held that it is not always reversible error to embody an entire statute in an instruction, even though the crime charged was based upon only one subdivision of the statute, when in subsequent instructions the crime charged was clearly and specifically defined to the jury.  In no instruction given by the trial court subsequent to instruction No. 5, do we find such a specific definition of the crime charged as would prohibit the jury from considering whether or not the resistance of the prosecuting witness had been overcome, either by force, under subdivision (2) of the statute, or by putting her in fear of great bodily harm, under subdivision (3).

As sustaining its contention, respondent cites *State v. Pierson,* 101 Wash. 318, 172 Pac. 236; *State v. Denby,* 143 Wash. 288, 255 Pac. 141; *State v. Hilsinger,* 167 Wash. 427, 9 P. (2d) 357; and *State v. Brown,* 178 Wash. 588, 35 P. (2d) 99.

We see nothing in the *Hilsinger* case to support respondent's contention.  Respondent quotes from the cited case as follows:

"In instructing a jury as to the statutory definition of the crime with which a defendant stands charged, all of the pertinent elements contained in the statute should be set forth."

This statement was made in connection with, and referred to, the definition of second degree murder, as given by the court in one of its instructions, and applied to the failure of the court to include in that instruction any definition of justifiable homicide. In the instant case, all the necessary elements of the crime were charged in the information.

In *State v. Pierson, supra,* the defendant was charged with the crime of subscribing to a false paper with intent to deceive the state bank examiner, under Rem. Code, § 3314, subdivision (2). There were three subdivisions in that section. In the cited case, we stated:

"It is true that the court read in full, as a part of the instructions, the entire statute, or what we have designated the three divisions thereof, but in a subsequent instruction the crime covered by the second division was clearly and specifically defined to the jury. While it was unnecessary for the court to embody the entire statute in the instructions, the jury could not have been misled thereby in view of the subsequent instruction."

We find nothing in the case of *State v. Denby, supra,* to support respondent's contention. In that case, the objection to the particular instruction was that it did not contain all the necessary elements to constitute a completed crime, and we held that such failure was not fatal, for the reason that, in a subsequent instruction, the court did tell the jury that the element omitted from the first instruction was necessary.

In *State v. Brown, supra,* the defendant was charged with murder in the first degree. The defendant based error on the giving of an instruction wherein the court defined murder in the first degree, murder in the

second degree, and manslaughter, having previously instructed the jury that all question of murder in the first degree had been withdrawn from the consideration of the jury. In the cited case we stated:

"It is, of course, true, as a general proposition, that the court should instruct only upon issues which are properly in the case and upon which the jury must pass.

"The court properly instructed the jury as to the statutory definition of the crime of manslaughter, and the same, referring, as it does, to the crime of murder in the first degree, makes an instruction concerning the definition of the latter crime proper in such a case as this."

We call attention to the case of *State v. Hessel,* 112 Wash. 53, 191 Pac. 637, not because it is factually the same as the instant case, but because we believe it indicates the view of this court as to the care which should be exercised by a trial court in instructing on the definition of the crime charged in an information, and the confusion which may result if the court includes in such definition any act, even though it be in the same statute, not charged in the information.

As indicating what might happen in any case where the court had included in an instruction a way or means by which the crime could be committed, different from that alleged in the information, we now desire to call attention to what subsequently transpired in the instant case, in the argument of counsel for the state. During the argument of Mr. Barber, deputy prosecuting attorney, the following occurred:

"MR. BARBER: Instruction No. 5, as given to you by the court, sets out by the court what the act of rape is, and in subdivision 'b' of said instruction, the court says this: 'When her resistance is prevented by fear of immediate,' MR. BOLIN: Just a moment. THE COURT: Approach the bench, please. MR. BOLIN: Let the record show that I am objecting to that line of argument.

THE COURT: All right. Proceed. MR. BARBER: (continues his argument to jury) When her resistance is prevented by fear of immediate and great bodily harm which she has reasonable cause to believe will be inflicted upon her."

Appellant bases error upon this reference by Mr. Barber to subdivision (b) of the instruction (subdivision (3) of the statute), and argument thereon. The record does not show what, if any, further argument was made in regard to this particular subdivision of the statute, but apparently no limitation was placed upon such argument by the court.

There was testimony in this case from which the jury might reasonably have concluded that the resistance of the complaining witness was overcome by force, or was overcome by fear of great bodily harm, which she had reasonable cause to believe would be inflicted upon her.

Under instruction No. 5 as given, we can come to no other decision than that the jury were warranted in believing that, if they found the resistance of Betty Marlowe was overcome in either way, it was sufficient, and especially is this true in view of the statement made by Mr. Barber. We are clearly of the opinion that the giving of instruction No. 5 constituted prejudicial error, as did also the argument of Mr. Barber.

In view of the conclusion reached by us that a new trial must be granted, we are of the opinion we should discuss some of the other assignments of error, as the same questions will undoubtedly arise on a retrial of the case.

By assignment of error No. 5, appellant contends that the court erred in sustaining an objection to questions propounded to the complaining witness regarding her relations with Cecil Boling, her boy friend

in Portland. In arguing this assignment of error, in his brief appellant states:

"The complaining witness had shortly prior to the alleged charge, had conversations relating to her relations with other men, with various witnesses called by the defense, particularly: Marial Cochran, Julia Hollenshade, Mary Howard and Viola Rayburn. Defendant desiring to show by those witnesses that the complaining witness was not as pure as she would like to have the jury believe, attempted to introduce those conversations by the witness above named, which was objected to by the state and sustained by the court, on the ground that it would be referring to specific acts, while in truth and in fact we were not even referring to specific acts, but to statements made by complaining witness to these various witnesses."

The questions and answers and the action of the trial court thereon, in so far as the complaining witness is concerned, appear on pages fifty and fifty-one of the statement of facts, where Mr. Bolin was questioning Betty Marlowe about her boy friend, Cecil Boling. We quote from the statement of facts:

"Q. You have gone down to visit him quite often? A. I have seen him, yes. Q. And you have stayed at his apartment? A. No, I have not, and . . . Mr. Barber: Just a minute, Betty. We are objecting to this, Your Honor. The Court: Have you authority? Mr. Barber: Yes. May the jury retire? The Court: No. Bring the book to me here. I will read it here."

Nothing appears in the record as to what action was taken by the court. Mr. Bolin then continued with his question:

"Q. You have been in his apartment? A. Yes, I have, with my girl friend, Miss Rena Chaney."

The record does not show that any further questions were by Mr. Bolin propounded to Betty Marlowe, relative to her relations with Cecil Boling, nor does the record show that Mr. Bolin interrogated, or at-

554

tempted to interrogate, Miss Marlowe in regard to conversations had with other parties, relative to her relations with other men.

The record being silent, we do not know what further questions counsel for appellant may have had in mind to propound to the complaining witness, relative to her relations with Cecil Boling, but from his argument we assume that he desired to ask her whether or not she had been intimate with Mr. Boling, that being the import of the above questions.

Whatever the rule in this state may formerly have been in regard to the right of a defendant in forcible rape cases to show specific acts of misconduct on the part of the complaining witness, it is now firmly established that such acts are not admissible. In *State v. Pierson*, 175 Wash. 650, 27 P. (2d) 1068, we stated:

"Counsel for appellant, on cross-examination of the prosecuting witness, asked her questions designed to show that she was a delinquent and unchaste girl. It is now settled in this state that the character of a witness can be attacked only by showing his general reputation, and not by specific acts of misconduct, unless such specific acts are material to the main issue. *State v. Gaffney*, 151 Wash. 599, 276 Pac. 873, 65 A. L. R. 405. As pointed out in that case, there are exceptions in cases of seduction and statutory rape. In such cases, the prosecuting witness may be cross-examined as to specific acts of unchastity. *State v. Jones*, 80 Wash. 588, 142 Pac. 35; *State v. Godwin*, 131 Wash. 591, 230 Pac. 831. The exception does not extend, for obvious reasons, to cases of forcible rape. *State v. Holcomb*, 73 Wash. 652, 132 Pac. 416; *State v. Gay*, 82 Wash. 423, 144 Pac. 711."

It will be recalled that counsel for appellant states in his brief that he desired to show by Betty Marlowe that, prior to the act here in question, she had had conversations with Marial Cochran, Mary Howard, Viola Rayburn, and Julia Hollenshade, relative to her rela-

tions with other men. While this statement is somewhat indefinite, we again assume that what appellant desired to show was that Betty Marlowe had admitted to these witnesses that she had been intimate with other men. All of the last named parties were permitted to and did testify as to the general reputation for chastity of Betty Marlowe in the community in which she lived. That is as far as it was permissible for these witnesses to go. The court would have been justified in refusing to allow these witnesses to testify to specific claimed acts of misconduct on the part of Betty Marlowe with other men.

However, none of these witnesses, with the exception of Julia Hollenshade, was in fact asked questions relative to conversations with Betty Marlowe, which might have reflected on the moral character of the complaining witness. Mrs. Hollenshade was asked if she had had a conversation with Betty Marlowe about Cecil Boling, and the witness answered "Yes", fixing the time as June 29, 1940. The state then moved that an offer of proof be made in the absence of the jury, and the court stated: "She may answer." The witness then testified:

"She [Betty Marlowe] had just returned from a trip to Portland, on the train, which comes in about 12:05, and she came to me in a hysterical condition, saying she had spent the previous night in the bedroom of Cecil Boling, at some address in Portland."

At this point an objection was made by the state, and the following occurred:

"THE COURT: That was on June 29th? It is way prior. MR. BOLIN: Of course it is prior, insofar as the chastity of this person is concerned. THE COURT: Let's hear what the conversation is, in the absence of the jury."

The jury was then excused, after which the witness stated:

"She said that she had spent the night in the bed with Cecil Boling the night before, and as a result of intercourse she thought that she was pregnant. And she said she hoped she was, because in that way she might be able to induce him to marry her, if it were proven true."

Objection to the above answer was made, which objection the court sustained, and the jury, upon being brought in, were instructed to disregard it (we presume the first answer of the witness made in the presence of the jury). We think that, for the reasons hereinbefore stated, the court properly sustained an objection to the offer of proof. On redirect examination of this witness, she was again asked the question to which the objection had been sustained, and over the objection of the state, was allowed to answer, apparently upon the theory that, in her cross-examination by Mr. Barber, she had been asked a question which opened up this field. We find nothing in the cross-examination of this witness which justified allowing her to testify to the conversation above referred to.

Appellant bases error upon the remarks made by the court to the witness Julia Hollenshade. It may be admitted that the remarks were a little severe, but the trial court had had trouble in getting this witness to answer the questions propounded to her, and had cautioned her. The remarks to which exception were taken were made in the absence of the jury. We are satisfied that the witness was not intimidated, nor the appellant prejudiced, by the court's remarks.

██ We desire next to discuss the assignment of error based upon the refusal of the court to admit appellant's identification "B". This instrument, which we shall call a letter, was admittedly written by Betty Marlowe. It does not appear that it was ever mailed by Betty, or received by Boling, nor does it appear

how it came into the possession of appellant. We set out the letter in full, together with what appears on the back thereof:

> "Wishram, Wash.·
> "Oct. 19, 1940
>
> "My Darling
> "Dad is bad at for being sick. What shell I do. Please do somthing for be- for my Dad *duse* for our sacks. This the first time I have asked for help. I need it now. Writ right away and tell me what to do.
>
> "With love    Btty.
> "You don't know how bad this hurt me to write this to you. But who—ell would understand.
> "I keep going to- the toilet all the time and have a ever. It is just what I tolled you in Portland that wrong with me. Tell me what to do for it and I will do it."

This letter was identified and offered during the cross-examination of Betty Marlowe. Objection was made to its introduction, and the objection was sustained. The letter was then read into the record, in the absence of the jury. At the time the offer was made, counsel for appellant stated:

"Defendant now offers to prove by defendant's identification No. 'B' for the purpose of establishing motive on the part of the complaining witness as to why she brought this charge against this defendant, the testimony heretofore being that the complaining witness testified that defendant's identification No. 'B' was her handwriting and was addressed, or rather was written to Cecil Boling."

In his brief, appellant's argument as to the reason why this letter should have been admitted was as follows:

"It is also the theory of the defense, that she being in trouble of some kind, needed money, and that her purpose in asking for $50.00 from the defendant and his family, was for the purpose of assisting her to go to Portland and have this trouble taken care of."

(Mary Howard and Viola Rayburn, daughters of Mrs. Severns, testified that the morning after the alleged act, Betty came over to see Viola Rayburn, and that, in the presence of both these witnesses, Betty stated that she had been raped by appellant, but that, if appellant would admit the charge in front of his wife, and give her fifty dollars, which she needed to go to Portland, she would drop the charge. Mrs. Severns testified that Betty made the same statement to her.)

Appellant's brief continues:

"Whatever it was, in the first part of the letter where she says: 'Dad is bad at me for being sick, please do something for me. This is the first time I have asked for help. I need it now, writ right away and tell me what to do'—this portion of the letter, we contend, would certainly support our contention and our testimony that she had asked us for $50.00.

"Then on the back of the letter at the side of the page it continues 'I keep going to—the toilet all the time and have a fever. It is what I told you in Portland that was wrong with me. Tell me what to do for it and I will do it.' Signed 'Betty.'

"We certainly feel this supports our contention that this Boling had been familiar with her and supports our theory of her being afflicted with a venereal disease, or something wrong with her; it would further tend to explain the reason for her being sore in her privates as stated by Dr. Morse."

The court was clearly right in rejecting the offer when it was first made, as at that time the defense had offered no proof to support any of the theories which appellant claims would justify the admission of the exhibit, and it in no way tended to impeach Betty's testimony or contradict anything she had testified to.

After the testimony was all in, appellant asked to reopen the case for the purpose of again making an offer of the exhibit. This motion the court denied,

and we think properly. In the first place, as we have stated, it was not proper for appellant to show, or attempt to show, by Betty Marlowe herself, or other witnesses, that she had been intimate with Cecil Boling prior to the act here charged. This being so, the letter would not be material as tending to support any such theory.

In the second place, there was no evidence that even tended to show that Betty Marlowe was afflicted with a venereal disease. The only testimony on this point was that of Dr. Morse, who examined her a few days after the occurrence here in question, and he testified that she had no venereal disease, but did have kidney trouble.

It also appears without contradiction that Betty had been afflicted with "spastic paralysis" from the time she was a small child, and that her uncle had taken her to many doctors to be treated for this disease. It does not appear from the record that her uncle knew of any other disease with which she might have been afflicted. Betty did not deny writing the letter, and did not deny that she had some physical disorder, but she did deny that she made any statement to Mrs. Severns or her daughter relative to the demand for fifty dollars.

We appreciate that a witness may be impeached by the introduction of a writing signed by the witness, containing statements inconsistent with his or her testimony. But there is nothing in this letter or on the back thereof which is inconsistent with Betty's testimony, and there is no purpose of which we are aware that would make this letter admissible in this case.

Appellant also contends that the court erred in giving instruction No. 6, in that the jury were informed that before they could find the defendant guilty they

must be satisfied beyond a reasonable doubt "A. That on either the 22nd day of October, 1940, or the 23rd day of October, 1940, between the hours of 4:30 in the morning and 8:30 in the morning," etc.

In view of the fact that appellant did not set out this instruction in full in his brief, as required by paragraph 5, of rule XVI, Rules of the Supreme Court, 193 Wash. 25-a (*State v. Hussey*, 188 Wash. 454, 62 P. (2d) 1350), we cannot consider this assignment of error in passing on appellant's motion for new trial. However, in view of the possible importance of such an instruction in a retrial of this case, we feel justified in making some comment on the instruction.

The complaining witness fixed the time definitely when the act here charged occurred, as on the morning of October 22, 1940, between the hours of four-thirty and six-thirty o'clock. She is corroborated as to the time by the sheriff of Klickitat county, who went to Wishram to investigate the case, and by Phil Williams, to whom she made complaint. On the other hand, at least three witnesses for appellant testified that appellant and his family, who lived in Hood River, did not arrive in Wishram until about noon of October 22nd, and contended, therefore, that appellant was not present on the morning of October 22nd, when Betty Marlowe claimed the act was committed.

The trial court recognized that one of appellant's defenses was an alibi, because the court gave an instruction on that defense.

It may be admitted that it is sufficient, in the absence of the defense of an alibi, to charge and prove that the act was committed on or about a certain date, and within three years next preceding the filing of the information, but when the complaining witness has fixed the exact time when the act charged was committed, and the defense is an alibi, the commission

of the crime on the exact date so fixed is the controlling issue, and the jury should be instructed that they must find the act to have been committed at that time. *State v. Morden,* 87 Wash. 465, 151 Pac. 832.

■ Appellant also contends that the court erred in giving instructions Nos. 8, 11, and 15. No exception was taken to the giving of these instructions, as required by rule X, Rules of Practice, 193 Wash. 47-a. In *State v. Visser,* 188 Wash. 179, 61 P. (2d) 1284, we stated:

"But, as already stated, no exceptions were taken to the instructions, either as to their substance or as to their applicability. In the absence of any exception, errors assigned upon instructions will not be considered. Moreover, Rule of Practice VI, Rem. Rev. Stat., § 308-6 [P. C. § 8676-9], requires that exceptions shall be sufficiently specific to apprise the trial judge of the points of law or questions of fact in dispute. *State v. Eckert,* 173 Wash. 93, 21 P. (2d) 1035."

Rule X, Rules of Practice, 193 Wash. 47-a, in effect August 1, 1938, is the same as Rule of Practice VI, referred to in the foregoing quotation.

■ Appellant apparently prepared six instructions. While we do not find in the statement of facts any specific ruling by the trial court on these proposed instructions, again we assume that the trial court refused to give them. This assumption is based on the fact that we do find that appellant excepted to the refusal to give his proposed instructions Nos. 1 and 2, but he did not except to the refusal to give proposed instructions Nos. 3, 4, 5, and 6.

Appellant did not file his proposed instructions until December 20, 1941, which was more than a month after the motion for new trial had been argued, and the judgment and sentence imposed and entered.

Rule XIII, General Rules of the Superior Courts, 193 Wash. 61-a, in effect August 1, 1938, provides that

"In every case which is being tried to the court and a jury, it shall be the duty of counsel for the respective parties, before or immediately after the first witness is sworn for the side not having to sustain the burden of proof, and before any testimony of such witness is given, to make five copies of all proposed instructions to the jury covering the law as disclosed by the pleadings and as developed by the evidence up to that time, *and then file one of such copies with the clerk,* deliver one thereof to opposing counsel and the remaining three thereof to the trial judge." (Italics ours.)

The importance of these rules of practice, which we have held to be mandatory and not directory, is apparent. Their purpose is to give to the trial court the benefit of the study and research of counsel, and to advise the trial court of the contentions of the respective parties as to the law or the facts, at a time when the court can, if it so desire, correct any error which it may feel it has made in its instructions.

In *Ittner v. McDonald,* 190 Wash. 526, 69 P. (2d) 566, we stated:

"The record shows that the case was tried before a jury in the lower court on April 27 and 28, 1936. A motion for a new trial was served and filed by appellant on April 30, 1936, based upon five statutory grounds. No exceptions were taken by counsel for appellant at the time the instructions were given and before the jury returned with their verdict, but were belatedly filed in the office of the clerk of the lower court on May 12, 1936.

"None of the contentions can be sustained because no timely exceptions whatever were taken to the giving or refusal of any instructions under Rule of Practice VI, 159 Wash. lxi, relating to exceptions, *which appellant erroneously asserts is not mandatory.*

"From *Kelley v. Cohen,* 152 Wash. 1, 277 Pac. 74, to *State v. Hussey,* 188 Wash. 454, 62 P. (2d) 1350, this court has consistently held that exceptions must

be taken as required by that rule, or such alleged errors will be disregarded." (Italics ours.)

For the reasons hereinbefore stated, and upon the authority cited, the errors based upon the giving of instructions Nos. 8, 11, and 15, and the refusal of the court to give requested instructions Nos. 3, 4, 5, and 6, cannot be considered by us.

We are also inclined to disregard the error based upon the refusal to give appellant's requested instructions Nos. 1 and 2, for the reason that they were not filed within the time prescribed by rule XIII, *supra*. However, we are satisfied that these two instructions do not properly state the law relative to this case, and were properly refused for that reason.

Other questions raised by appellant we deem either to be without merit, or such as probably will not arise on a retrial of this case.

For the reasons herein assigned, the judgment is reversed, with instructions to the lower court to grant a new trial.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.