IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37491-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DONALD LUCAS PRICHARD, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Donald Lucas Prichard appeals his convictions for first degree burglary, malicious harassment, and four counts of second degree assault. We affirm in part, reverse in part, and remand as set forth below.

## FACTS[1]

Donald Lucas Prichard and Jason Cooper identify as white separatists who do not believe people of different races should intermix. Both men regularly carry firearms. During a late night in October 2017, Mr. Prichard and Mr. Cooper were together at Mr. Cooper's house. They were drunk and went outside where they "jokingly" hurled obscenities at each other. *See* 1 Report of Proceedings (RP) (Feb. 27, 2020) at 284-85.

---

[1] Based on the nature of the contested issues on appeal, the facts from trial are presented in the light most favorable to the State.

Next door to Mr. Cooper, Norris Cooley lived in a garage converted to living space

that was slightly behind but connected to a house. A woman named Elizabeth Fisher lived

in the main residence of the house along with her son, 17-year-old K.A.B., and

her daughter, 14-year-old A.S.W.[2] Mr. Cooley was a Black man.[3] Ms. Fisher is white.

At the time Mr. Prichard and Mr. Cooper were engaged in their drunken banter,

Mr. Cooley was going in and out of his residence. He was with his friend, Chad Taylor.

Mr. Taylor was working on his car in Mr. Cooley's driveway.

At some point, Mr. Cooper began yelling at Mr. Cooley instead of Mr. Prichard.

He used racist slurs. Mr. Prichard ran to join Mr. Cooper. The men told Mr. Cooley he

should not be with white people. Mr. Prichard said something to the effect of, "'Smile

in the dark, n[*****], so I can see you. I might shoot you.'" *Id*. at 335.

The racist taunts against Mr. Cooley turned physical. Witnesses saw Mr. Cooley

and the men running in and out of his residence. Mr. Taylor tried yelling at the men, but

he got in his car after one of them lifted his shirt to expose what appeared to be a firearm.

At some point during the altercation, Mr. Cooper punched Mr. Cooley. Witnesses could

---

[2] To protect the privacy interests of Ms. Fisher's minor children, we use their initials throughout this opinion. Gen. Order 2012-1 of Division III, *In re Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber= 2012_001&div=III.

hear Mr. Cooley was in pain. Mr. Prichard and Mr. Cooper then took off in Mr. Prichard's white sport utility vehicle (SUV). Various witnesses called 911.

After leaving, Mr. Prichard and Mr. Cooper went to a nearby Yoke's Fresh Market. The men sat in Mr. Prichard's SUV drinking and waiting for what they thought would be enough time for the police to respond to the 911 calls and leave. The men had three firearms with them inside the vehicle.

Mr. Cooper and Mr. Prichard returned prior to any police response to the 911 calls. Mr. Prichard got out of the SUV and began shooting toward the Fisher / Cooley residence. Mr. Cooper joined in the shooting. Mr. Cooley and Ms. Fisher were in the living room of the main residence at the time. Ms. Fisher testified that "bullets were spraying everywhere."[4] 1 RP (Feb. 26, 2020) at 130. She ducked to the floor at the urging of Mr. Cooley. Both Ms. Fisher and Mr. Cooley narrowly escaped injury.

Ms. Fisher's children were in their rooms at the time of the shooting. K.A.B. heard loud bangs that he did not immediately realize were gunshots. He then heard yelling and went downstairs to the living room where he saw his mother and Mr. Cooley on the floor. K.A.B. saw a bullet hole in the television and a broken picture frame.

---

[3] Mr. Cooley died prior to trial for reasons unrelated to this case.

[4] Law enforcement later documented 12 bullet strikes to the house and former garage. *See* Ex. 30.

A.S.W. started walking from her bedroom to the living room when she heard the gunshots. She was able to see Mr. Prichard's white SUV outside. As she entered the living room, A.S.W. noticed damage to the television and the screen door, bullet holes in the walls, and a bullet hole through a pillow on the couch. A.S.W. then helped place another call to 911. Others did the same. Mr. Prichard and Mr. Cooper took off again in the SUV.

Police eventually apprehended Mr. Prichard and Mr. Cooper. Mr. Cooper agreed to cooperate against Mr. Prichard in return for a favorable plea agreement. Mr. Prichard was charged in superior court with first degree unlawful possession of a firearm, first degree burglary, malicious harassment, and five counts of first degree assault (against Norris Cooley, Elizabeth Fisher, K.A.B., A.S.W. and Chad Taylor). Mr. Prichard pleaded guilty to the firearm charge and took the remaining counts to trial.

Mr. Prichard took the stand at trial in his own defense. He admitted to being with Mr. Cooper at the time of the initial altercation, but claimed the dispute was purely between Mr. Cooper and Mr. Cooley. Mr. Prichard also testified he parted company with Mr. Cooper after the two men left Yoke's. According to Mr. Prichard, he was not with Mr. Cooper during the shooting.

The jury convicted Mr. Prichard of first degree burglary, malicious harassment,

4

and four counts of the lesser included offense of second degree assault. Mr. Prichard was acquitted of assaulting Mr. Taylor. At sentencing, the trial court determined Mr. Prichard qualified as a persistent offender based on his criminal history. He received a mandatory sentence of life without the possibility of early release on all counts but the firearms charge. Mr. Prichard appeals.

ANALYSIS

*Uncharged alternative means (malicious harassment)*

The parties agree Mr. Prichard's conviction for malicious harassment must be reversed without prejudice based on nonconformity between the original charge and the court's instructions to the jury. We accept this concession.

Malicious harassment is an alternative means crime that can be committed in three distinct ways. Former RCW 9A.36.080(1) (2010). The charge against Mr. Prichard specified one of the three alternative means: harassment by threat. Former RCW 9A.36.080(1)(c). However, the trial court's instructions to the jury went beyond the scope of the information and defined malicious harassment in terms of two alternative means: harassment by threat and harassment by causing physical injury to the victim. Clerk's Papers (CP) at 540; *see also* former RCW 9A.36.080(1)(a), (c). In addition, the court's to-convict instruction advised the jury the malicious harassment charge required proof Mr. Prichard "caused

physical injury to Norris Russell Cooley." CP at 541. The to-convict instruction made no mention of the State's obligation to prove harassment by issuance of a threat.

"[I]t is error for a trial court to instruct the jury on uncharged alternative means." *In re Pers. Restraint of Brockie*, 178 Wn.2d 532, 536, 309 P.3d 498 (2013) (citing *State v. Severns*, 13 Wn.2d 542, 548, 125 P.2d 659 (1942)). On appeal, the error is presumed prejudicial and it is the State's burden to show the error was harmless beyond a reasonable doubt to avoid reversal. *See id*. (quoting *State v. Rice*, 102 Wn.2d 120, 123, 683 P.2d 199 (1984)). If the error was not harmless, the appropriate remedy is reversal and a new trial. *Severns*, 13 Wn.2d at 563.

The State does not argue harmless error. Given the wording of the to-convict instruction and the fact that the State argued harassment by injury during summation, we accept the State's concession. The variance between the original charge and the trial court's jury instructions was not harmless. Mr. Prichard's conviction for malicious harassment must be reversed.

*Sufficiency of the evidence*

Mr. Prichard challenges the sufficiency of the State's evidence as to burglary and two of his assault convictions. In this context, our analysis requires substantial deference to the jury's verdict. We must view "'the evidence in the light most favorable to the

prosecution'" and ask whether "'any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.'" *State v. Scanlan*, 193 Wn.2d 753,

770, 445 P.3d 960 (2019), *cert. denied*, *Scanlan v. Washington*, __U.S.__, 140 S. Ct. 834,

205 L. Ed. 2d 483 (2020) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628

(1980) (plurality opinion)). "A claim of insufficiency admits the truth of the State's

evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*,

119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

*Burglary*

Mr. Prichard claims the State failed to produce sufficient evidence to justify his

conviction for first degree burglary because there was no evidence showing entry into a

building.[5] The trial evidence belies this claim. A.S.W. pointed to Mr. Prichard as one of

---

[5] The court's instructions identified four elements of first degree burglary:

> (1) That on or about October 8, 2017, the defendant entered or remained unlawfully in a building;
> (2) That the entering or remaining was with intent to commit a crime against a person or property therein;
> (3) That in so entering or while in the building or in immediate flight from the building the defendant or an accomplice in the crime charged was armed with a deadly weapon or assaulted a person; and
> (4) That any of these acts occurred in the State of Washington.

CP at 535.

the men she saw going "from the garage to the side of the house." 1 RP (Feb. 26, 2020) at 117. Chad Taylor testified he saw Mr. Prichard coming out of the door leading to Mr. Cooley's living space in the former garage. A neighbor named Amelia Marshall testified that she saw men fighting and running through the same door. This evidence was more than sufficient to permit the jury to infer Mr. Prichard unlawfully entered Mr. Cooley's residence.

*Assault*

The parties agree Mr. Prichard's second degree assault convictions required proof that each of the named victims actually and reasonably perceived themselves to be in imminent danger of bodily injury. According to Mr. Prichard, the State failed to produce sufficient evidence on this front with respect to K.A.B. and A.S.W. We agree as to K.A.B., but not as to A.S.W.

K.A.B.'s trial testimony was very brief. He said he was upstairs at the time of the shooting. He heard loud bangs that he did not immediately recognize as gunshots. He then went downstairs and saw his mother and Mr. Cooley on the living room floor, along with a bullet hole in the television and a broken picture frame. K.A.B. was never asked whether he feared he might have been injured during the shooting. There is no evidence K.A.B. was even aware a shooting had occurred until after it was over. Given these

8

circumstances, the State did not present sufficient evidence to justify Mr. Prichard's

assault conviction against K.A.B.

A.S.W.'s testimony was also brief, but differed from that of her brother. According

to A.S.W., she was walking toward the living room while shots were being fired. A.S.W.

was able to see Mr. Prichard's white SUV. She agreed with the prosecutor that she "could

have been dead" as a result of the shooting. 1 RP (Feb. 26, 2020) at 123. While thin,

A.S.W.'s testimony was sufficient to permit a reasonable inference that she saw the

shooting as it was happening and feared for her life.

*Assistance of counsel*

Mr. Prichard contends he was deprived of effective assistance of counsel because

his attorney failed to object to leading questions to A.S.W. and her mother about their

luck in surviving the shooting. The State answers that Mr. Prichard's attorney reasonably

refrained from objecting to the prosecutor's questioning, and no prejudice resulted from

the questions. We agree with the State.

To prove deprivation of the right to effective assistance of counsel under the

Sixth Amendment to the United States Constitution, a defendant must show "counsel's

performance was deficient" and "the deficient performance prejudiced the defense."

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Failure to show either deficient performance or prejudice precludes relief. *Id*. at 700.

Mr. Prichard does not meet either prong of this test.

We disagree with Mr. Prichard that his attorney's failure to object constituted deficient performance. Mr. Prichard's defense at trial was not that there was no assault on the victims; he claimed he was not even present at the time of the shooting. Objecting to the State's questions would not have furthered Mr. Prichard's line of defense. Doing so may have detracted from Mr. Prichard's attempt to place blame solely on Mr. Cooper. The decision not to object to the prosecutor's leading questions to two of the victims was reasonably strategic.

Counsel's failure to object also was not prejudicial. An objection to the State's questions likely would have allowed the prosecutor to rephrase the questions to A.S.W. and her mother. Had this occurred, the same information would have been in front of the jury, only now with more emphasis. Counsel's failure to object was not prejudicial.

*No-contact order sentencing condition*

The parties agree that because Mr. Prichard was not convicted of assaulting Chad Taylor, the court's judgment and sentence should not have included a no-contact order regarding Mr. Taylor. We accept this concession. This may be corrected on remand.

10

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Mr. Prichard brings 13 more claims in his pro se statement of additional grounds for review.

*Challenges regarding GR 37*

GR 37 is a relatively new procedural rule, applicable to the exercise of peremptory challenges at trial. Peremptory strikes are notorious for providing "a cloak for race discrimination" in jury selection. *State v. Saintcalle*, 178 Wn.2d 34, 45, 309 P.3d 326 (2013) (plurality opinion), *abrogated on other grounds by City of Seattle v. Erickson*, 188 Wn.2d 721, 398 P.3d 1124 (2017). There is "'no constitutional right to [exercise] peremptory challenges.'" *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 309, 422 P.3d 458 (2018) (quoting *State v. Kender*, 21 Wn. App. 622, 626, 587 P.2d 551 (1978)). Prior to the adoption of GR 37, there was some talk of eliminating peremptory challenges altogether. *Saintcalle*, 178 Wn.2d at 51-52. Rather than take this approach, GR 37 was written to regulate the exercise of peremptory strikes with an eye toward eliminating "the unfair exclusion of potential jurors based on race or ethnicity." GR 37(a).

At trial, Mr. Prichard attempted to strike a prospective juror (Juror 9) from the venire panel using a peremptory challenge. The State and the trial judge recognized Juror 9 as a person of color. The State objected to Mr. Prichard's strike pursuant to GR 37(c),

which then required Mr. Prichard to supply a race-neutral justification for the strike.

GR 37(d).[6] Mr. Prichard claimed he struck Juror 9 from the panel because she expressed

confusion over the presumption of innocence. The trial court observed Juror 9 had been

rehabilitated on this point. The court denied Mr. Prichard's peremptory strike and Juror 9

was allowed to remain on the panel. At a posttrial hearing on a mistrial motion brought by

Mr. Prichard as a result of the GR 37 ruling, the trial court reiterated that "an objective

observer could view race or ethnicity as a factor" in the use of the peremptory challenge.

RP (Feb. 27, 2020) at 17; *see also* GR 37(e).

On appeal, Mr. Prichard contends GR 37 is unconstitutional and application of the

rule in his case was unwarranted. The four claims encompassed in these challenges fail.

Mr. Prichard's constitutional claims are not sufficiently developed to warrant

review. Mr. Prichard fails to explain how the concepts of burden shifting or vagueness

apply to GR 37. We are not obliged to research legal authorities that might support

Mr. Prichard's arguments. *See State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978)

(quoting *DeHerr v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

---

[6] The rule does not explicitly state the party exercising the peremptory challenge
must supply a justification for the strike that is race neutral, but this is implicit given the
nature of GR 37 and its legal underpinnings.

Looking to the issue of the trial court's application of GR 37, we discern no impropriety. GR 37 does not require proof of purposeful discrimination. Instead, so long as an objective observer, aware of problems with implicit bias, *could* have viewed race or ethnicity as *a* factor in the exercise of the peremptory challenge, the strike may be denied. Particularly given the nature of the case on trial, the trial court correctly surmised that an objective observer could deem race was a factor in Mr. Prichard's decision to strike Juror 9.

In addition, even if the trial court misapplied GR 37, it is not clear Mr. Prichard would be entitled to relief. The "mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Rivera v. Illinois*, 556 U.S. 148, 158, 129 S. Ct. 1446, 173 L. Ed. 2d 320 (2009). We are unaware of any authority to support the claim that the Washington Constitution provides greater protection.[7] Nor does Mr. Prichard argue as much. The trial court's GR 37 determination is affirmed.

---

[7] Prior to the United States Supreme Court's decision in *Rivera*, the Washington Supreme Court had held that a trial court's erroneous denial of a peremptory strike could constitute structural error. *State v. Vreen*, 143 Wn.2d 923, 933, 26 P.3d 236 (2001). *Vreen* was based on our Supreme Court's interpretation of federal case law that has since been overruled. *See Meredith*, 191 Wn.2d at 311-12.

*Challenges regarding constitutional privacy rights*

Mr. Prichard brings four challenges regarding his constitutional privacy rights. He argues:

(1)   the State's creation of a mirror image of his cell phone's data, and its

examination of the timeline of that data, exceeded the scope of the warrant;

(2)  his attorney rendered ineffective assistance by failing to call the State's

detective and the FBI (Federal Bureau of Investigation) forensic examiner to

the stand to testify during the CrR 3.6 hearing;

(3)  the State's use of GPS (Global Positioning System) tracking with "ZetX"

constituted a warrantless search; and

(4)  his attorney rendered ineffective assistance by failing to challenge at trial

the GPS tracking and search warrant for Mr. Prichard's home.

The first two arguments fail for lack of factual support. The claim that law enforcement could have searched Mr. Prichard's cell phone through means less intrusive than the creation of a mirror image copy of the data is purely speculative. There is no information that additional witnesses, such as the State's detective or FBI examiner, would have shed light on this issue. If Mr. Prichard has evidence indicating the State could have searched his cell phone data through the use of less invasive means, his

recourse is to seek relief through the filing of a personal restraint petition. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition.").

Mr. Prichard's second two claims fail on their merits. ZetX is an online service that allows law enforcement to identify the carrier associated with a specific cell phone number. Law enforcement here used ZetX in two ways: (1) identify the carrier for Mr. Prichard's cell phone and (2) organize records obtained from the cell phone provider in response to a warrant. Nothing about the use of ZetX implicated Mr. Prichard's right to privacy. Mr. Prichard's attorney was therefore not ineffective in failing to object to the use of ZetX.

*Miscellaneous assistance of counsel challenges*

Mr. Prichard brings three additional ineffective assistance of counsel challenges. He asserts his trial attorney:

(1) opened the door to harmful testimony when cross-examining Mr. Taylor about the photo lineup;

(2) failed to consult him about the State's request for instruction on lesser included offenses; and

(3)   failed to object when the prosecutor mentioned Mr. Prichard and Mr. Cooper

served time together in prison.

Mr. Prichard's miscellaneous ineffective assistance of counsel claims are unsuccessful. His claim regarding his attorney's failure to consult him is outside the scope of the trial record and cannot be reviewed in his direct appeal. *See McFarland*, 127 Wn.2d at 335. His remaining two claims are not sufficiently supported to rebut the presumption of his trial attorney's competence. *See id*. at 336. Neither does Mr. Prichard attempt to show prejudice. *See Strickland*, 466 U.S. at 694. These claims are not bases for appellate relief.

*Prosecutorial misconduct*

Mr. Prichard alleges the prosecutor committed misconduct by discussing the time Mr. Prichard and Mr. Cooper served together in prison. There was no objection at trial. Given the lack of objection, Mr. Prichard must show not only that the prosecutor's statement was improper, but it was "so flagrant and ill intentioned that an instruction could not have cured the prejudice." *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). Mr. Prichard has not met this standard. To the extent the prosecutor's comments were improper, they could have been addressed by a corrective instruction.

No. 37491-2-III
*State v. Prichard*

*Cumulative error*

Mr. Prichard's final claim is he should be afforded relief under a theory of cumulative error. This argument fails as well. Mr. Prichard has not shown multiple errors compounded on each other in a way to deprive him of a fair trial. Relief based on cumulative error is unwarranted.

CONCLUSION

Mr. Prichard's conviction on count 2, malicious harassment, is reversed without prejudice. The conviction on count 7, second degree assault against K.A.B., is reversed with prejudice. The remainder of Mr. Prichard's convictions are affirmed. This matter is remanded for further proceedings. On remand, the no-contact order sentencing conditions will be corrected to conform to the counts of conviction.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, C.J.

WE CONCUR:

_____    _____
Lawrence-Berrey, J.                 Staab, J.

17