IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32103-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TYSON J. ROMANESCHI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Tyson Romaneschi appeals his convictions for first degree child assault, violation of a protection order, and violation of a no-contact order, raising several contentions. We conclude that the court properly admitted his statements to the police, his instructional error and jury conference reporting challenges were not preserved for appeal, and the evidence was sufficient to support the assault conviction. Accordingly, the convictions are affirmed.

FACTS

Mr. Romaneschi and Shayna Tipton are the parents of E.R., a daughter who was six weeks old at the time of the incidents at issue here. On February 6, 2012, Ms. Tipton took E.R. to the doctor due to illness. The doctor determined that the child had lost weight and she was suffering from an infection that required hospitalization. X-rays

taken at the hospital showed numerous fractures in the child's ribs, as well as some fractures in her limbs. The injuries were at varying stages of healing. An investigation was begun.

The police made arrangements to interview Ms. Tipton the next day. Mr. Romaneschi accompanied her to the appointment at the police station. Both parents were separately interviewed after having their *Miranda*[1] rights read to them and agreeing to talk to the detectives. The detectives told the parents about the medical findings, advised that the injuries were not accidental, and asked what they knew about the cause of the injuries.

Mr. Romaneschi was first interviewed by a male detective, and then a female detective replaced the first detective. Mr. Romaneschi told the detectives that he would squeeze E.R. to get her to go to sleep; the harder the child would cry, the faster she would go to sleep. He also sometimes would rapidly raise her legs to her nose. He told the detectives that he had no idea he might be hurting the child. Over the course of the 40 minute interview, he would both get angry and then also cry. He explained that he was frustrated about being unemployed for three years. He then ended the interview and left the building with Ms. Tipton. The following day he called a detective on the telephone and blamed the hospital for the injuries suffered by E.R.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

He was arrested soon thereafter. The prosecutor filed one count of first degree child assault, alleging that the defendant intentionally assaulted the child, thereby causing substantial bodily harm and that he had previously engaged in a pattern or practice of assaulting the child. Charges of violation of a no-contact order, violation of a protection order, and witness tampering also were filed. A CrR 3.5 hearing was held and Mr. Romaneschi's statements to the police were found admissible. CrR 3.5 findings were entered. Clerk's Papers (CP) at 117-119. The matter then proceeded to jury trial.

At trial, the State's medical experts described the child's healthy birth and early development, as well as the urinary tract infection that led to hospitalization and the discovery of the fractures. The experts opined that the injuries were not accidental. A defense expert testified otherwise, ascribing the condition to rickets.

At the conclusion of testimony, the jury was sent off on its noon recess and the parties and the court held an instruction conference primarily related to a lesser included offense instruction before breaking for lunch. Report of Proceedings (RP) at 920-928. After lunch, the jury instruction conference resumed in the courtroom outside the presence of the jury. The judge directed the court reporter not to report the conference. RP at 929. When the conference concluded, the court went back on the record. Neither party had any objections or exceptions. The court then read the instructions to the jury and the parties made their closing arguments. As it was then the end of the day, the jury was instructed to go home and begin deliberations the next morning.

After the jury had left, the trial judge pointed out that the definitional instruction for child assault had included the language of the torture alternative means of committing assault, even though that alternative had not been charged and the elements instruction correctly recited only the charging theory. RP at 998. Defense counsel noted that he had missed the issue, too. The court suggested striking the additional language; counsel agreed. RP at 998-999. A correct definitional instruction was submitted in writing to the jury, but the instruction was never read to the jury. CP at 255.

The jury convicted Mr. Romaneschi of first degree assault and found the presence of two aggravating factors—the victim was particularly vulnerable and the defendant used a position of trust to commit the crime. The jury also found Mr. Romaneschi guilty of the no-contact and protection order violations, but was unable to agree on the witness tampering count.

The court imposed a standard range sentence of 120 months for the assault conviction, and concurrent 364 day sentences on the two gross misdemeanor offenses. Mr. Romaneschi then timely appealed to this court.

## ANALYSIS

This appeal presents four challenges that we address as three issues. We first consider Mr. Romaneschi's challenge to the admission of his statement to the police, then consider the two jury instruction related challenges together, and finally address the sufficiency of the evidence to support the assault conviction.

*Statement to the Police*

Mr. Romaneschi contends that his statement to the police should not have been admitted, arguing that he was coerced into giving inculpatory information. To that end, he challenges court's finding 13 that there was no testimony that any coercive or tricky techniques were used by law enforcement. We conclude that the finding is supported by substantial evidence and also agree that the detectives did not coerce a statement from Mr. Romaneschi.

A trial court's suppression hearing findings are reviewed for substantial evidence, when challenged, and will be treated as verities if not challenged. *State v. Hill*, 123 Wn.2d 641, 644-646, 870 P.2d 313 (1994). Substantial evidence is defined as "a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). All evidence is viewed in the light most favorable to the prevailing party and deference must be given to the fact-finder. *Freeburg v. City of Seattle*, 71 Wn. App. 367, 371-372, 859 P.2d 610 (1993). An appellate court may not substitute its view of the evidence for that of the fact-finder. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). A trial court's legal determinations are reviewed *de novo*. *Sunnyside*, 149 Wn.2d at 880.

Statements made to police are inadmissible if they are the product of police coercion, even if the defendant was properly advised of his right against self-incrimination. *State v. DeLeon*, 185 Wn. App. 171, 200, 341 P.3d 315 (2014). Typically, coercion will be found if a confession is extracted by threat, in exchange for a promise from the police, or is the result of improper influence. *Id.* at 202 (internal citations and quotations omitted). The party claiming coercion bears the burden of proving its existence. *Horn v. State*, 52 Wn.2d 613, 614, 328 P.2d 159 (1958); *State v. Bird*, 31 Wn.2d 777, 781, 198 P.2d 978 (1948). Courts adjudge claims of coercion by looking to the entirety of the circumstances, including the length of the interrogation, the defendant's maturity and mental health, and whether he was advised of his rights. *State v. Unga*, 165 Wn.2d 95, 101, 196 P.3d 645 (2008).

In support of his argument, Mr. Romaneschi claims that the two detectives were playing "bad cop, good cop" with him, had stated that they disbelieved him, and that he became agitated and angry over the accusations. Those contentions do not establish coercion and fail to establish that the court erred in finding no untoward conduct by the police. An officer telling a suspect that she does not believe his story is neither improper nor coercive. Neither has Mr. Romaneschi provided any authority suggesting that alternating questioning by officers displaying varying approaches is somehow coercive. Similarly, a suspect's emotional reaction to questioning is not coercion by the police. In

all, these contentions do not undercut the trial court's finding of fact that there was no coercive behavior during the interview. It was supported by substantial evidence.

The totality of the circumstances likewise supports the conclusion that the statements were voluntary. Mr. Romaneschi voluntarily came down to the police station for Ms. Tipton's interview and agreed to talk to the detectives despite knowing the subject of the interview. Even though not in custody, he was advised of his *Miranda* rights and agreed to talk to the detectives. He was interviewed in a conference room by one detective at a time for a combined period of less than 45 minutes. He was never threatened, nor did officers offer him any inducement to confess. He later chose to terminate the interview and leave. Mr. Romaneschi was in control of this interview from his decision to start it to his decision to conclude it. This is not a picture of a young man forced to make a statement to the police.

The trial court correctly denied the motion to suppress. Substantial evidence supported its factual finding that there was no coercive police behavior during the interview. The totality of the circumstances confirms that the statements made to the police were voluntary. There was no error.

*Instruction Related Issues*

Mr. Romaneschi also contends that the trial court erred both in not having a portion of the jury instruction conference reported and in its treatment of instruction 9 defining the crime of first degree child assault. Because he did not object in the trial

7

court and does not establish manifest constitutional error, we treat these two contentions together.

The general rule in Washington is that an appellate court will not consider an issue on appeal which was not first presented to the trial court. RAP 2.5(a); *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). However, RAP 2.5(a)(3) permits a party to raise initially on appeal a claim of "manifest error affecting a constitutional right." The error must be both (1) manifest and (2) truly of constitutional magnitude. *Id.* at 688. A claim is manifest if the facts in the record show that the constitutional error prejudiced the defendant's trial. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). However, if the necessary facts are not in the record, "no actual prejudice is shown and the error is not manifest." *Id.*

With that rule in mind, we turn to the law governing Mr. Romaneschi's two challenges. By statute, a court reporter may be required to provide "a full report of the testimony, exceptions taken, and all other oral proceedings . . . except when the judge and attorneys dispense with his or her services with respect to any portion of the proceeding." RCW 2.32.200. On appeal, due process of law requires that the reviewing court must have a record of sufficient completeness to review the appellant's claims of error. *State v. Larson*, 62 Wn.2d 64, 67, 381 P.2d 120 (1963).

The constitution also requires that the elements instruction properly reflect all of the elements of the crime with which the defendant is charged. *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). It is error for that instruction to include alternative means not alleged in the charging document. *State v. Severns*, 13 Wn.2d 542, 548, 125 P.2d 659 (1942); *State v. Chino*, 117 Wn. App. 531, 540, 72 P.3d 256 (2003).[2] However, definitional instructions typically do not present issues of a constitutional nature. *State v. O'Hara*, 167 Wn.2d 91, 101, 217 P.3d 756 (2009); *Scott*, 110 Wn.2d at 690-691.

CrR 6.15 governs instructions. Before instructing the jury, the court "shall supply counsel" with copies of the proposed instructions and verdict forms, and then allow counsel the "opportunity in the absence of the jury to object to the giving of any instructions and the refusal to give a requested instruction." CrR 6.15(c). "The court shall read the instructions to the jury." CrR 6.15(d). Argument from the parties then follows. *Id.* In order to preserve jury instruction challenges, a party must give "timely and well stated objections" so that a trial court can correct error. *Scott*, 110 Wn.2d at 685-686.

With all of these principles in mind, Mr. Romaneschi's two challenges fail because he cannot identify any manifest constitutional error. First, his challenge to the failure to report the final portion of the instruction conference does not identify any

---

[2] The error is harmless if other instructions leave only the charged alternative before the jury. *Severns*, 13 Wn.2d at 549; *Chino*, 117 Wn. App. at 540.

constitutional basis that would justify review of the issue. The court reporter's obligation to create a record arises from statute, not the constitution, and even at that the statute allows the judge to dispense with reporting. RCW 2.32.200. Thus, if Mr. Romaneschi wanted the latter portion reported, he needed to object. His failure to do so dooms this claim.[3]

Mr. Romaneschi therefore claims a due process violation arising from the lack of a proper record on appeal, but the record does not establish that anything is lacking. The trial court took exceptions and objections on the record; the parties had none. RP at 929. Counsel had the opportunity to object to the original version of instruction 9 on the record, but did not do so. The record is more than adequate for this court to determine if the issue was preserved. It was not.

The challenge to the handling of the definitional instruction likewise is not preserved. The court's error was in failing to re-read the instruction to the jury when it was corrected. CrR 6.15(d). That is a violation of a court rule, but is not constitutional error. Similarly, the erroneous instruction itself did not present a constitutional question because it involved a definitional instruction. The jury was properly instructed on the elements of the charged offense, which is the only constitutional question presented in

---

[3] CrR 6.15(c) does not require an instruction conference, so it is difficult to imagine that the non-essential conference would need to be reported.

10

this context. Accordingly, there is no constitutional question related to instruction 9 in either of its iterations.

Neither challenge was preserved and neither one can be considered by this court. RAP 2.5(a).

*Sufficiency of the Evidence*

Mr. Romaneschi also challenges the sufficiency of the evidence to support the first degree child assault conviction, specifically arguing that he did not intend to harm his child. Properly viewed, the evidence supported the verdict.

Well settled standards govern review of this issue. Evidentiary sufficiency challenges are reviewed to see if there was evidence from which the trier of fact could find each element of the offense proven beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Id.* Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-875, 83 P.3d 970 (2004). "Credibility determinations are for the trier of fact and are not subject to review." *Id.* at 874.

11

As charged in this case, the elements of the crime were:

(1) A person eighteen years of age or older is guilty of the crime of assault of a child in the first degree if the child is under the age of thirteen and
. . . .

    (b) Intentionally assaults the child and either:
. . . .

    (ii) Causes substantial bodily harm, and the person has previously engaged in a pattern or practice either of (A) assaulting the child which has resulted in bodily harm that is greater than transient physical pain or minor temporary marks.

RCW 9A.36.120(1)(b)(ii)(A).[4] *See* CP at 162; 256.

While Mr. Romaneschi points to his love for his daughter and lack of parenting skills as a basis for arguing that he did not intend to harm the child, his focus is wrong. The question is not whether the defense had evidence to contest the State's evidence, but whether or not the State had evidence that supported the jury's determination. Here, it did.

There were a series of broken bones over an extended period of the child's life, evidence that not only established the bodily harm element, but also showed intent. This was not an accident. He also admitted that the harder the child cried, the sooner she went to sleep. Causing a child to essentially pass out from pain is certainly an assault, and Mr. Romaneschi both knew that the child was in pain from his actions and purposely continued that course of action in order that she would pass out. Whether or not he knew

---

[4] Subparagraph (B) is the "torture prong" at issue in the original instruction 9.

12

No. 32103-7-III
*State v. Romaneschi*

he was breaking her bones, he knew he was hurting her through his actions. He intentionally assaulted the child.

The evidence supported the jury's verdict.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Fearing, J.

13